749 So.2d 379 (1999)
MID-DELTA HOME HEALTH, INC. and Mississippi Physicians Insurance Company, Inc., Appellants,
v.
Denise ROBERTSON, Appellee.
No. 1998-WC-01938-COA.
Court of Appeals of Mississippi.
October 19, 1999.
*381 Laura A. Henderson-Courtney, Florence, Peter L. Corson, Madison, Attorneys for Appellants.
Ellie F. Turnage, Halbert E. Dockins Jr., Melvin L. Pace, Jackson, Attorneys for Appellee.
BEFORE SOUTHWICK, P.J., DIAZ, AND MOORE, JJ.
DIAZ, J., for the Court:
¶ 1. Mid-Delta Home Health, Inc., and Mississippi Physicians Insurance Company, Inc., the employer and carrier, appeal the decision of the Humphreys County Circuit Court affirming the Workers' Compensation Commission and the administrative law judge's decisions to award Denise Robertson temporary total disability at $243.75 per week from February 22, 1994, through December 31, 1996, permanent disability at $96 per week for 450 weeks from December 31, 1996, and reasonable and necessary medical services pursuant to Mississippi Code Annotated Section 71-3-15 (Rev.1995), plus penalties and interest.
*382 ¶ 2. The Full Commission affirmed the administrative judge's order in toto and denied the employer's motion to admit additional evidence. Mid-Delta and MPIC assert in their statement of issues the following assignments of error in this appeal: (1) whether the Commission erred in awarding compensation as set out in the Full Commission order of August 28, 1997, and in directing payments under the Mississippi Workers Compensation Act, (2) whether the Commission erred in awarding compensation when the claimant failed to establish her claim through clear and convincing evidence as required by law, (3) whether the findings of the Commission are contrary to the credible evidence, contrary to the great and overwhelming weight of the evidence, and contrary to the law, (4) whether the Commission erred in denying Mid-Delta and MPIC's motion for review of new evidence after improperly allowing the testimony of Mary Steele, and (5) whether the Commission erred in directing Mid-Delta and MPIC to pay penalties pursuant to Mississippi Code Annotated Section 71-3-37 (Rev.1995). We find that there was not substantial evidence presented upon which the Full Commission could find that Robertson was entitled to permanent disability. Therefore, we affirm in part and reverse in part the ruling of the circuit court.

FACTS
¶ 3. The claimant, Denise Robertson, filed a petition to controvert a workers' compensation claim on January 4, 1995. Therein, Robertson alleged that she sustained an exclusively mental injury while in the employ of Mid-Delta which became disabling on or about February 21, 1994. Mid-Delta Home Health, Inc., and Mississippi Physicians Insurance Company, Inc., the employer and carrier, filed an answer on January 18, 1995, disputing the payment of any benefits or medical expenses to Robertson.
¶ 4. Robertson is a resident of Yazoo City. She grew up in Washington County. Robertson testified that she was good student who had no problems with truancy or discipline imposed by either school administrators or her parents. Throughout high school, she was employed part-time. Prior to this claim, Robertson neither experienced nor was treated for emotional problems. She was not the victim of abuse, either physical or mental, at the hands of her parents or others. Robertson does have a sister who takes medication for a chemical imbalance which stemmed from a poisoning incident and not as a result of genetic makeup.
¶ 5. After high school, Robertson attended Tougaloo College on an academic scholarship and worked on campus. Robertson left college to deliver her first child, Candice. She married Gregory Robertson in 1980 who had graduated from Tougaloo and worked in the Yazoo City Public Schools. Gregory was diagnosed with sickle cell anemia during his youth and suffered occasional crises. He is disabled from employment. Robertson was employed at various places until she accepted employment with Mid-Delta. She testified that she maintained good health, was active and athletic, and had not suffered any major illness.
¶ 6. Robertson was hired by Clara Reed, owner and CEO of Mid-Delta, in the Fall of 1988 for the position of administrative secretary to Reed. Her responsibilities included but were not limited to taking incoming calls for Reed, handling correspondence, opening mail, and scheduling appointments for Reed. Robertson initially characterized Reed as an excellent employer who motivated her employees and demanded quality work from them. Equally, Reed consistently evaluated Robertson's job performance as above average and often approved a salary increase with these reports.
¶ 7. Although Robertson's family life and job were demanding, she continued to pursue her education at Tougaloo College. It became difficult for Robertson to leave Mid-Delta in time to attend her classes. *383 According to Robertson, she explained the situation to Reed who advised Robertson to decide what was important in her life. She did not continue her education after that semester.
¶ 8. In early 1990, Robertson's sister Audrey was poisoned. Although it was not fatal, it had detrimental effects on her health. Audrey returned home to Greenville to live with her family. She takes medication for her condition.
¶ 9. By the Fall of 1990, Robertson stated that her job duties were expanding and things at her workplace were getting more stressful and more complicated. Robertson also testified that she was responsible for typing and formatting documents for the entire Mid-Delta staff. At this point, she stated that she felt overwhelmed and asked Reed for assistance. According to Robertson, help was not forthcoming. Instead, her workload increased, and she bore the brunt of Reed's anger when others failed to complete their assigned tasks. Robertson stated that she worked harder including extended hours to complete her increasing job assignments. Despite her efforts to complete her tasks, it was difficult for her to leave work for functions associated with her daughter or for church meetings. Nonetheless, the performance evaluations conducted by Reed did not indicate a diminution in Robertson's abilities or performance.
¶ 10. By the Fall of 1991, Mid-Delta was growing in size and stature in the home-health community, so Reed decided to pursue accreditation through the Community Health Accreditation Program (CHAP). In doing so Reed hired additional staff members. According to Robertson, the increase in work load required her to stay late at work two nights a week. Additionally, Reed began making derisive comments about Robertson in front of guests and other employees. At this point, Robertson felt intimidated and fearful for her job. Coincidentally, she began throwing up at home and at work and losing weight rapidly. She was diagnosed by Dr. L.C. Tennin with irritable bowel syndrome for which she took prescription medication.
¶ 11. In 1991, Robertson ran for Circuit Clerk of Washington County. She often stayed late at her office to work on nonagency related business associated with her campaign. Robertson applied for and received payment for accrued leave time to help pay her campaign expenses. Robertson was not successful in her bid for elected office.
¶ 12. In June of 1992, Gregory Robertson was interrogated by law enforcement officials. In August of 1992, FBI agents arrested him in their home. Gregory was convicted in July of 1994 and served nearly five months of his sentence. He was released pending a new trial in November of 1994. Eventually, the charges were dismissed by a federal district court.
¶ 13. The Robertson family was audited by the IRS for the years 1990-1991 and it was determined that they owed an additional $6000 in taxes. Robertson testified that Reed offered to pay her for accumulated leave time and did so in order for her to pay the IRS tax debt. Thereafter, the installment payments were paid on time and paid in full on schedule.
¶ 14. Through the Fall of 1992, Robertson worked over-time at Mid-Delta. She requested assistance and additional staffing, but none was forthcoming. Robertson continued to lose weight, was often "wired and jumpy," and began feeling a numb sensation in her legs. Reed took this opportunity to deride Robertson's appearance since her clothes were baggy and no longer fit. Additionally, Robertson's face and body began to break out in a rash. As the CHAP accreditation proceeded, Robertson worked until 6:30 in the evenings at the office and took home additional work which was often not completed before 11:00 that night. She was back at work at Mid-Delta at 8:00 the next morning. At this point, Mid-Delta had grown from seventy-eight employees when Robertson started work to 390 employees.
*384 ¶ 15. After Mid-Delta received the accreditation, Robertson's title changed to Administrative Assistant to the CEO. Although Reed made it clear to Robertson that this position required a college degree, Reed told her that she would overlook that requirement. After the accreditation was complete, Reed asked Robertson to complete work for some of her other businesses, including paying the bills for We Care and making payroll for Total Health Care.
¶ 16. After a year in her new position, Robertson's health began to deteriorate. Among other things, Robertson experienced rapid weight loss, stomach problems including cramping and vomiting, serious headaches, numbness in her lower extremities, and outbursts of crying. During the same year, Robertson stated that Reed became increasingly demanding, thoughtless and insensitive to the needs of her staff. In fact, Robertson related an incident at a morning meeting in February of 1992 where Reed, an African-American, told her white staff members to disregard her comments and directed racial slurs toward her African-American employees and told then they should be glad they had jobs. Robertson stated there were other occasions when Reed referred to her with a racial slur and stated that she did not deserve to work at Mid-Delta.
¶ 17. Robertson continued to work through February 1994 despite the fact that she still suffered physically from the stress of her job. On February 21, 1994, Robertson experienced impaired vision and a headache severe enough to excuse her from work. The next morning when her symptoms had not subsided her husband took her to Dr. Tennin. After numerous tests, Dr. Tennin diagnosed Robertson with depression, anxiety, and stress-related symptoms including right-handed tremors. He prescribed Paxil and Xanax for Robertson's symptoms. Dr. Tennin referred Robertson to Dr. Meredith, a psychiatrist at the University Medical Center. Robertson was treated by Dr. Meredith until he left UMC. Thereafter Dr. Sudhakar Madakasira treated her. Robertson was uncomfortable with Dr. Madakasira, so she was referred by Dr. Tennin to Dr. Maude Wright who observed anxiety, depression, and trouble with concentration. She diagnosed adjustment disorder with anxiety and depression with a superimposed feature of major depression. Dr. Wright treated her and even suggested that Robertson could eventually return to work in a less stressful atmosphere. Dr. Wright adjusted Robertson's medication dosages and started her on individual therapy focusing on behavior modification. Furthermore, three general stressors were identified by Dr. Wright: (1) flashbacks at work including impressions of mistreatment and overwork; (2) Greg's illnesses and IRS and legal troubles; and (3) the inability to work after having been able to work and considering herself a hard worker. The administrative law judge relied on Dr. Wright's opinion that Robertson became dysfunctional as a result of her work at Mid-Delta. However, Dr. Wright also opined that Robertson's mental problems were related to the stressors of her home life. Eventually, Robertson started working in a physician's office ten hours a week making $12 an hour.
¶ 18. The Humphreys County Circuit Court affirmed the Full Commission's decision, and this appeal was taken.

DISCUSSION
¶ 19. Since the first three issues presented by Mid-Delta and MPIC are interrelated, we combine the analysis of those issues in the interest of clarity.

I. WHETHER THE COMMISSION ERRED IN AWARDING COMPENSATION AS SET OUT IN THE FULL COMMISSION ORDER OF AUGUST 28, 1997, AND IN DIRECTING PAYMENTS UNDER THE MISSISSIPPI WORKERS' COMPENSATION ACT
¶ 20. The Workers' Compensation Commission is the trier and finder of facts in a compensation claim, the findings *385 of the Administrative Law Judge not withstanding. If the Commission's findings of fact and order are supported by substantial evidence, all appellate courts are bound thereby. This is so, even though the evidence would convince this court otherwise, were we the fact finder. Stated differently, this Court will reverse the Commission's order only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence.
Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (1988)(internal citations omitted).
¶ 21. A claimant bears the general burden of proof of establishing every essential element of her claim, and it is not sufficient to leave the matter to surmise, conjecture, or speculation. Fought, 523 So.2d at 317; Flintkote Co. v. Jackson, 192 So.2d 395, 397 (Miss.1966); Narkeeta, Inc. v. McCoy, 247 Miss. 65, 69, 153 So.2d 798, 800 (1963); V. Dunn, MISSISSIPPI WORKERS' COMPENSATION, § 265 (3d ed.1982).
The claimant, as a general proposition, has the burden of proof. He must meet this burden by showing an accidental injury arising out of and in the course of his employment and a causal connection between the injury and the claimed disability.
Narkeeta, 153 So.2d at 800.
¶ 22. If the claimant successfully establishes a disability and the injury suffered is not specifically scheduled by the Workers' Compensation statute, the claimant's disability is measured by loss of wage-earning capacity. Miss.Code Ann. § 71-3-17(c)(25) (Rev.1995); V. Dunn, supra, § 86; Robinson v. Packard Elec. Div. G.M.C., 523 So.2d 329, 331 (Miss. 1988). Disability measured in this manner is referred to as "industrial" disability as opposed to "functional" or "medical" disability; the claimant must prove industrial disability by proving medical impairment which results in diminished wage-earning capacity. Robinson, 523 So.2d at 331.
¶ 23. Thus, the fact that the employee has secured some form of employment does not, by itself, negate the employee's case for compensation. Georgia Pacific v. Taplin, 586 So.2d 823, 828 (Miss. 1991). If, because of the subject injury, the employee cannot secure employment at pre-injury pay, then the employee may be entitled to disability payments. Piper Industries, Inc. v. Herod, 560 So.2d 732, 734-735 (Miss.1990).
¶ 24. While the Mississippi Supreme Court has held that mental injuries are compensable under the Act, they have done so very narrowly and under certain defined circumstances. Bates v. Country-brook Living Ctr., 609 So.2d 1247, 1248 (1992)(holding that "mental injury, unaccompanied by physical trauma, must be shown to have been caused by something more than the ordinary incidents of employment"); Brown & Root Const. Co. v. Duckworth, 475 So.2d 813 (1985) (holding incident between claimant and his immediate supervisor which caused claimant to suffer hysterical-conversion reaction constituted "untoward event" or "unusual occurrence" and thus supported finding of compensability); Miller Transporters Ltd. v. Reeves, 195 So.2d 95, 100 (1967)(holding that evidence sustained finding of Commission that claimant truck driver's emotional disability was due to injury arising out of and in the course and scope of his employment).
¶ 25. The court in Peery, in setting the tone for compensable mental injuries under the Act, reaffirmed the requisite burden of proof for establishing an injury from an untoward event:
In general, where the claim is based upon a mental or nervous disease, it is viewed with the normal suspicion attending claimed disabilities which have no physical cause traceable to objective findings, and the burden of proof, which rests upon the claimant, is greater than in ordinary cases. The accident must be *386 established by evidence bringing it within the realm of probability, the causal connection with the accident must be shown by "clear evidence," and must not be remote.
Smith and Sanders, Inc. v. Peery, 473 So.2d 423, 425 (Miss.1985) (quoting Dunn, supra, at § 114). In Peery, the court carved out the only exception to the traditional rule of liberal construction of the Act and specifically held that layoffs and terminations cannot be characterized as unusual occurrences or untoward events when such are rightful or based upon economic reasons. Id. at 426 (holding that doing so would extend benefits to "any employee who suffers depression or anxiety upon being rightfully terminated").
¶ 26. After careful review of the record, we have concluded that substantial evidence existed to warrant the circuit court and the Full Commission's decisions to affirm the administrative law judge's order of temporary workers' compensation benefits to Robertson. Under the principles of Flintkote, Robertson bears the burden to prove the essential elements of her claim by competent, credible evidence which is beyond speculation, conjecture, and possibility. Robertson claimed that she was unable to function as an administrative assistant because of the mental stress she endured as Reed's employee. The administrative law judge aptly described Mid-Delta as "a hellish work environment." Robertson presented substantial evidence to support a finding that she was entitled to temporary benefits including medical records of her treatment by Dr. Wright and Dr. Tennin, as well as, testimony of other Mid-Delta employees.
¶ 27. Additionally, Robertson had to prove a causal connection between her mental injury and her alleged permanent disability. Dr. Wright opined, and the Full Commission agreed with the administrative law judge who decided, that a causal connection existed between Robertson's mental injuries and her temporary disability. However, Dr. Webb and even Dr. Wright agreed to some extent that Robertson could return to work immediately in similar employment and without limitations. Robertson offered no specific testimony of any physician that she was totally disabled as a result of her employment by Mid-Delta nor did she present any evidence that she sought alternate employment other than the temporary part-time job she held at a local doctor's office. The Full Commission agreed with the administrative law judge that a causal connection existed between Robertson's mental injury and a permanent disability. However, in the case sub judice, the order of the Workers' Compensation Commission is not supported by specific findings of fact and is contrary to the weight of credible evidence. Permanent disability benefits would have been proper in this case if specific findings of fact were in the record to show that Robertson was entitled to such. In this case, the only evidence concerning permanent disability comes from Dr. Wright who stated that there would be no limitations with regard to Robertson's employment prospects. Since the requisite facts are not present, this Court will reverse the circuit court's decision and the Full Commission's order and award Robertson only temporary disability benefits and deny her claims for permanent partial disability benefits.

II. WHETHER THE COMMISSION ERRED IN DENYING MID-DELTA AND MPIC'S MOTION FOR REVIEW OF NEW EVIDENCE AFTER IMPROPERLY ALLOWING THE TETIMONY OF MARY STEELE
¶ 28. Mississippi Workers' Compensation Commission Rule 5, subpart IV states that each party must submit a pretrial statement that sets forth the names and address of each lay witness expected to testify except those to be called for impeachment or rebuttal purposes. Mississippi Rule of Civil Procedure 26(b)1 outlines the scope of discovery and states in pertinent part that parties may obtain discovery including the identity and *387 location of persons who may be called as witnesses at the trial. However, the Mississippi Rules of Civil Procedure are limited in the scope of procedure applicability to circuit, chancery, and county courts in civil suits. MRCP 1; see also Mississippi Dept. of Human Servs. v. Baum, 730 So.2d 58 (¶ 15) (Miss.1998)(holding Mississippi Rules of Civil Procedure are inapplicable in administrative proceedings). Furthermore, it is important to note which rules of evidence are applicable in a workers' compensation case:
It has never been held that the [Mississippi Workers' Compensation] Act prohibits the use of common law or statutory rules of evidence. On the contrary, it is said that a total disregard of time-honored guidelines and rules would be violative of due process. What is meant by the Act's provision that the commission shall not be bound by these rules or procedural technicalities in order to more fully develop the facts.
DUNN, supra, at § 261.
¶ 29. The decision to reopen a workers' compensation case is purely discretionary with the Commission, and the Commission's order will not be reversed absent a clear abuse of discretion. Smith v. Container General Corp., 559 So.2d 1019, 1023 (Miss.1990); see also Day Detectives, Inc. v. Savell, 291 So.2d 716, 723 (Miss.1974) (holding that refusal of Commission to hear additional evidence was not subject to review in absence of clear abuse of discretion). Likewise, a trial court has considerable discretion regarding discovery matters and its orders will not be disturbed unless there has been an abuse of discretion. Dawkins v. Redd Pest Control Co., 607 So.2d 1232, 1235 (Miss.1992); Palmer v. Biloxi Regional Medical Ctr., Inc., 564 So.2d 1346, 1368 (Miss.1990). The Commission's procedural rules are obviously less formal than those of a trial court.
¶ 30. Delta Drilling Co. v. Cannette, 489 So.2d 1378, 1380-81 (Miss.1986), states:
We emphasize that the Commission is an administrative agency, not a court. It has broad discretionary authority to establish procedures for the administration of compensation claims. It has like authority to relax and import flexibility to those procedures where in its judgment such is necessary to implement and effect its charge under the Mississippi Workers' Compensation Act. It is a rare day when we will reverse the Commission for an action taken in the implementation and enforcement of its own procedural rules.
(emphasis added); see also V. DUNN, supra, § 363 (3d. ed.1990).
¶ 31. Mid-Delta and MPIC argue that Mary Steele should not have been allowed to testify on rebuttal because they did not know her identity nor the substance of her testimony prior to the hearing. The administrative law judge restricted Steele's testimony. She testified that she heard Reed use racial slurs at a meeting in Belzoni in February of 1992 which rebutted Reed's earlier testimony that she would "give [her] life if anyone ever said that [she] used racially derogatory language." After the hearing, Mid-Delta and MPIC reviewed Steele's time-sheets. They claim that, based on these time-sheets, it would have been impossible for Steele to have been in Belzoni when she claimed to have heard Reed make the racially derogatory remarks.
¶ 32. Mid-Delta and MPIC argue that Steele's testimony was improper since she was an undisclosed witness and that her time sheets should have been admitted by the Commission since these records impeach her testimony regarding when she heard the racially derogatory remarks. As noted by authorities such as Baum, Dunn, Mississippi Workers' Compensation Commission Rules, and Mississippi Rule of Civil Procedure 1, Mid-Delta and MPIC's reliance on Mississippi Rule of Civil Procedure 26(b)1 for discovery purposes in this case is misplaced. Since the Mississippi Workers' Compensation *388 Commission is considered an administrative agency, matters heard by it fall outside the scope of the traditional discovery rules in Mississippi. Nonetheless, the Commission will not disregard the time-honored guidelines of discovery, but it will relax and import flexibility to those procedures where it is necessary to implement and effect the purpose of the Commission under the Mississippi Workers' Compensation Act. Under Mississippi Workers' Compensation Rule 5, Robertson was not required to disclose Steele's identity since she was classified as a rebuttal witness for purposes of the administrative hearing. Steele's testimony as a rebuttal witness was proper, especially since it was restricted by the administrative law judge to specifically rebut Reed's testimony during Mid-Delta and MPIC's case-in-chief. Furthermore, even if Steele's testimony should have been presented during Robertson's case-in-chief, the supreme court has declined to reverse workers' compensation cases for technical errors, such as the reception of evidence on rebuttal which should have been offered in chief. Id. § 360.
¶ 33. As stated in Smith, the Commission enjoys great latitude in deciding whether to reopen a workers' compensation case for the admission of additional evidence. Although Steele's time sheets reveal that she may not have been in Belzoni at the exact time to which she testified, the Commission denied admitting them as new evidence after it heard arguments on the subject. Mid-Delta and MPIC argue that the administrative law judge relied extensively upon Steele's testimony to find that Robertson met her burden. However, the opinion of the administrative law judge refers to the testimony of many Mid-Delta employees and former employees such as Deborah Walker, Sarita Daniels, Liz Johnson, not to mention Reed and Robertson, to decide that Robertson had met her burden. The Commission's order will not be reversed absent a clear abuse of discretion. Here, Mid-Delta and MPIC fail to prove that the Commission abused this discretion. Therefore, this assignment of error is without merit.

III. WHETHER THE COMMISSION ERRED IN DIRECTING MID-DELTA AND MPIC TO PAY PENALTIES PURSUANT TO MISSISSIPPI CODE ANNOTATED § 71-3-37
¶ 34. Mid-Delta and MPIC also argue that the Commission erred in directing them to pay penalties pursuant to Mississippi Code Annotated Section 71-3-37. However, neither cites any legal authority in support of this assignment of error. The supreme court has repeatedly stated that it is the appellant's duty to provide authority in support of his claims of error. Drennan v. State, 695 So.2d 581, 585-86 (Miss.1997). Accordingly, Mid-Delta and MPIC's failure to cite authority for this issue precludes appellate review.
¶ 35. THE JUDGMENT OF THE HUMPHREYS COUNTY CIRCUIT COURT IS AFFIRMED IN PART AND REVERSED IN PART. ONE-HALF OF THE COSTS OF THIS APPEAL ARE TO BE PAID BY THE APPELLANTS AND ONE-HALF BY THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, AND THOMAS, JJ., CONCUR. PAYNE, J., CONCURS IN RESULT ONLY. IRVING, J., NOT PARTICIPATING.