MYERS, J.,
for the Court:
¶ 1. The Full Commission of the Mississippi Workers’ Compensation Commission denied James Fisher disability. From that order he appealed to the circuit court which affirmed. Aggrieved, Fisher appeals to this Court raising the following issue as error
I. WHETHER THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION’S DECISION THAT FISHER DID NOT SUFFER A WORK-RELATED INJURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. James Fisher worked for Empire Gas of Columbus, Mississippi, as a retail manager from August or September 1994 until August 1995. The business of Empire Gas was to deliver propane gas to residential and commercial customers throughout the area stores. Fisher was responsible for managing the Empire Gas stores in Columbus and Amory. The personnel at these stores consisted of a store manager, who was responsible for the inside business, doing such things as answering the telephone, billing, and accounts receivable. The retail manager, Fisher’s position, was usually in charge of everything outside the store, including retail sales, setting tanks, painting tanks, emergency calls, and customer service. When Fisher was originally hired, there were drivers who would deliver gas, one from the Amory store, the other from the Columbus store.
¶ 4. In either February or March of 1995, both drivers left Empire Gas, and Fisher was then responsible for all of the outside duties and delivery of gas from both stores. In June or July of 1995, Fisher also became responsible for the Fayette, Alabama store. Fisher complained that he was being overworked, and the president of Empire Gas, Steve Plaster, told him that they were trying to get help.
¶ 5. On August 15, 1995, while Fisher was mowing the grass at one of the stores, he collapsed. He began to feel faint, short of breath, dizzy, he lost his ability to do simple reasoning, and his chest began to hurt. Fisher discontinued the yard work. Approximately two weeks later, on August 31, 1995, Fisher went to the hospital with complaints of feeling faint, shortness of breath, and chest pains. He did not go back to work for Empire Gas after that date. Fisher was hospitalized to rule out possible heart attack. All the tests were negative. Fisher asserted he was required to do more work which was beyond the stress an ordinary person could stand.
¶ 6. Steve Plaster testified for Empire Gas. He was president of Empire Gas when Fisher was employed with the company, but was no longer affiliated with this company when he testified. Plaster testified that he hired Fisher with the thought that Fisher, after a trial of being retail *1004 manager, might make a good regional manager over a number of stores. Plaster testified that the actual sales for the Columbus and Amory stores combined produced the least volume in the region during the year ending June 1995. He stated that Fisher had a time management problem, and that in his opinion, the low sales were a lack of effort on Fisher’s part, though Fisher was very capable of performing the work. At one time or another, Plaster had another retail manager oversee Fisher’s work trying to help teach him how to sell gas and organize his time better. Plaster testified that from September though March was the busiest time of the year for Empire Gas, and the other months are spent getting ready for the winter months.
¶ 7. Carl Bushey also testified for Empire Gas. Bushey took over the position of retail manager for the Columbus and Amo-ry stores after Fisher left. He was responsible for Columbus and Amory from October 1995 until sometime in 1996 when the Amory store was closed and the company merged most of the Amory customers to Columbus. He testified that there were approximately 1,000 customers and that he had no problems working as a retail manager for both stores, having done that job for the past two and a half years. Bushey testified that the winter months are the most busy for the company, and that he did not look forward to the summer months because he liked “to stay busy.”
¶ 8. Next to testify for Empire Gas was Linda Jones, the office manager at the Amory store while Fisher was employed. She testified that she did not think Fisher was overworked and that he spent a lot of time in his office.
¶ 9. Tori Freeman testified next for Empire Gas. She no longer worked for the company, but when she did she had been the retail manager of the Bay Springs, Waynesboro, and Jackson, Mississippi stores. She testified that she was asked in 1995 to assist Fisher as he appeared to have a time management problem. She worked out a schedule for Fisher, but he never kept to those schedules.
¶ 10. Admitted into evidence were the depositions of several of Fisher’s treating physicians. The affidavit of Dr. Donald C. Guild, a psychiatrist, was put in as an exhibit. In this affidavit Dr. Guild opined that Fisher had a depressive disorder, not otherwise specified, and an anxiety disorder, not otherwise specified; however:
I think this patientfs] problems are routed with his excessive work load while at Empire Gas. His compulsive perfectionistic personality combined with his needs to please, forced him into overworking in what would have been an untenable situation and he was unable to leave something undone as he should...
The patient does not realize that symptomatolgy is probably mostly psychological and continues to seek medical treatment and evaluation from what he sees as a physical disorder....
¶ 11. Dr. Allen R. Cooley, a psychologist, testified that he first saw Fisher on or about September 11, 1995, on a referral from David Price, an assessment counsel- or. Dr. Cooley stated that his initial diagnosis was anxiety disorder, not otherwise specified. When he last saw Fisher, in October of 1995, his diagnosis was panic disorder. He opined that Fisher’s initial anxiety disorder and ultimate panic disorders were related in part to his work stress; however, he did not believe work stress was the sole cause of Fisher’s panic disorder. He testified that Fisher is a perfectionist with some hypermanic features and that he brought that to his work position.
¶ 12. Dr. Clyde Alexander Sheehan, a psychiatrist, first saw Fisher on or about October 31, 1995. Dr. Sheehan testified that based upon a reasonable degree of medical probability he could not state that Fisher’s emotional symptoms for which he saw him were related to his work. Fur *1005 ther, he opined that Fisher’s pre-existing personality factors, a depressive disorder, had contributed to the emotional symptoms of which he complained. Tests Dr. Sheehan ran on Fisher indicated that he was a person who more readily developed physical symptoms under stress than the average person.
¶ 13. Dr. William D. Logan, Jr., a family practitioner, who is also board certified in the field of thoracic and cardiac surgery, did not see Fisher as a patient, but reviewed the records of other treating physicians. Dr. Logan testified that the symptoms Fisher presented, and for which he was admitted to the hospital, could certainly be due to fatigue and stress.
¶ 14. Dr. Mark Chatman Webb, a psychiatrist who performed an evaluation on Fisher’s condition at the request of Empire Gas, testified that in his opinion Fisher had a generalized anxiety disorder, and obsessive compulsive personality traits. Dr. Webb testified that Fisher had a history of constantly changing jobs which was due to his maladaptive personality. Fisher’s emotional status, in Dr. Webb’s opinion, was not related to his work at Empire Gas, but rather was a pre-existing illness that made it difficult for him to continue to stay there. Dr. Webb testified that he disagreed with Dr. Sheehan, who diagnosed Fisher as having a depressive disorder, Dr. Cooley’s assessment, who diagnosed Fisher as having a panic disorder, and Dr. Logan’s assessment that the claimant had stress in work and should avoid being placed in overly stressed situations.
¶ 15. After having heard all the evidence presented by the parties and having considered the same, the administrative law judge found by a preponderance of the evidence that Fisher was not overworked by Empire Gas and placed under excessive pressure to the point of collapse. Further, he found that the evidence as a whole did not clearly show that what Empire Gas expected and required of Fisher exceeded the general stress or ordinary wear and tear of the work place. The Full Commission of the Workers’ Compensation Commission affirmed. Fisher appealed the order of the Commission to the Lowndes County Circuit Court, which affirmed the Full Commission.
STANDARD OF REVIEW
¶ 16. We will apply a deferential standard of review to the Commission’s findings and decisions. Lanterman v. Roadway Express, 608 So.2d 1340, 1345 (Miss.1992). If substantial evidence supports the Commission’s findings of fact and order, all appellate courts are bound thereby. Champion Cable Const. Co. v. Monts, 511 So.2d 924, 927 (Miss.1987). When conflicting evidence has been presented, we will not decide the preponderance of the evidence, “the assumption being that the Commission, as the trier of fact, has previously determined which evidence is credible, has weight, and which is not.” McGowan v. Orleans Furniture, 586 So.2d 163, 165 (Miss.1991) (quoting Metal Trims Indus., Inc. v. Stovall, 562 So.2d 1293, 1297 (Miss.1990)). We will reverse the Workers’ Compensation Commission only if we find that its order was clearly erroneous or contrary to the overwhelming weight of the evidence. Myles v. Rockwell Int’l, 445 So.2d 528, 536 (Miss.1983).
ANALYSIS
¶ 17. Fisher argues that the Commission chose to ignore the treating physicians and substantial medical evidence of record in his case. He opines that because he suffered an injury, whether it was physical or mental, arising out of the course or scope of employment, his injury should be compensated.
¶ 18. Beyond the ordinary standard found in workers’ compensation claims, the claimant who pleads a mental or psychological injury has to sustain a heightened burden of proof which evidences a causal connection between the employment and the injury. Sibley v. *1006 Unifirst Bank for Sav. Through Resolution Trust Corp., 699 So.2d 1214, 1218 (Miss.1997). For mental injuries to be compensable under the Act, this compensation is only given under certain defined circumstances. Mid-Delta Home Health, Inc. v. Robertson, 749 So.2d 379 (¶ 24) (Miss.Ct.App.1999). “[Wjhen a claimant seeks compensation benefits for disability resulting from a mental or psychological injury, the claimant has the burden of proving by clear and convincing evidence the connection between the employment and the injury.” Fought v. Stuart C. Irby, Co., 523 So.2d 314, 317 (Miss.1988). To be compensable, a mental or psychological injury, unaccompanied by physical trauma, must have been caused by something more than the ordinary incidents of employment. Id. See also Mid-Delta Home Health, 749 So.2d at 379 (¶ 24); Bates v. Countrybrook Living Ctr., 609 So.2d 1247, 1248 (Miss.1992); Brown & Root Const. Co. v. Duckworth, 475 So.2d 813, 815 (Miss.1985).
¶ 19. Perhaps the paramount case discussing mental or psychological injury was the case of Fought v. Stuart C. Irby, Co., 523 So.2d 314, 317 (Miss.1988). In Fought, the claimant petitioned for benefits for disability resulting from mental or psychological injury when she was reprimanded at work after being called into the supervisor’s office and told that the supervisor was not satisfied with her work initiative. Id. at 315. She was told that her absences were a problem. Id. Fought claimed that she suffered a severe psychological reaction to this criticism. Id. Our supreme court held that, when a claimant seeks compensation benefits for disability resulting from a mental or psychological injury, the claimant has the burden of proving by clear and convincing evidence the connection between the employment and the injury and that the mental injury must have been caused by something more than the ordinary incidents of employment. Id. at 317. The court stated that the Commission may reasonably have regarded harassments or stresses to which the claimant was subjected as nothing more than the ordinary incidents of employment, and not untoward events or unusual occurrences. Id. at 318.
¶ 20. Here in Fisher’s case, the Commission, in affirming the administrative law judge, found that the precipitating events that formed the basis of Fisher’s claim to be nothing more than ordinary incidents of his employment. The administrative law judge indicated that Fisher’s case fell far short of the kind of prolonged and excessive working hours that she would entertain before seriously considering a claim of his type-that Fisher’s incidents of employment were not extraordinary.
¶ 21. Substantial medical and psychiatric evidence supports the decision of the Commission, affirmed by the circuit court below, that Fisher is not disabled due to work-related mental injury. Keeping in mind our limited scope of review and the evidence presented, we cannot say the Commission’s fact supported decision, affirming the administrative law judge’s initial finding, was clearly erroneous or against the overwhelming weight of the evidence. We affirm.
¶ 22. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.