McMILLIN, C.J., for the Court:
¶ 1. Rocky Pickering injured his back while working for Cooper Tire & Rubber Company. He filed for workers’ compensation benefits, seeking, among other things, permanent partial disability benefits due to his permanently diminished physical condition and due to alleged disabling mental depression caused by his physical injuries. The Mississippi Workers’ Compensation Commission awarded Pickering certain temporary disability benefits but concluded that he had recovered completely from his on-the-job injuries and was, thus, not entitled to further benefits. Pickering appealed that ruling to the Circuit Court of Lee County without success, and he now brings his appeal to. this Court. He urges this Court to conclude (a) that the Commission’s finding that Pickering suffered no permanent physical impairment adversely affecting his wage earning capacity was not supported by substantial evidence, (b) that the Commission erred in finding that Pickering’s symptoms of depression were not related to his work injury, and (c) that the Commission erred in failing to order Cooper Tire to pay certain medical expenses incurred by Pickering based on a finding that the expenses were not reasonably required for the treatment of Pickering’s job-related injury.
¶ 2. Based on this Court’s limited authority to subject a decision of the Commission to judicial review, we conclude that the Commission’s ruling must be affirmed.
I.
Facts
¶ 3. Pickering worked in production for Cooper Tire’s vehicle tire manufacturing facility in Lee County. On October 25, 1993, while attempting to lift heavy materials used in the manufacturing process, Pickering sustained an injury to his back of sufficient severity to cause him to- be temporarily unable to continue work. Pickering was seen by a number of physicians during the post-injury period, including his family physician, Dr. William Gary, along with six other doctors. Three of these doctors released Pickering to return to work without any restriction based on complications arising from his injury. Dr. James Bailey suggested that Pickering would have lifting limits of no more than fifty pounds. Pickering did not return to work, claiming that he continued to suffer substantial pain that prevented him from performing the duties of his job. Cooper Tire officials, suspecting that Pickering’s limitations on physical activity were not as drastic as he claimed, subjected him to surveillance, and on one occasion, he was videotaped in the process of repeatedly unloading large bags of animal feed from the back of a-pickup truck without any sign of discomfort or limitation. The videotape was introduced into evidence before the Commission.
¶ 4. After being released to return to work by three different physicians, Pickering began seeing Dr. John McFadden, a self-proclaimed pain specialist, who treated him for pain and also referred him to Dr. Bruce Senter. When Dr. Senter released Pickering to return to work with no restrictions, Dr. McFadden referred Pickering to Dr. James Bailey, who suggested that Pickering would have lifting limits of no more than fifty pounds. Dissatisfied with this evaluation, Pickering requested that'Dr. McFadden refer him to yet another doctor, Dr. McGuire.
¶ 5. In December of 1996, Pickering underwent spinal surgery for disk problems *300 diagnosed as a degenerative condition. The surgery was performed by Dr. McGuire, but he declined to offer an opinion that the spinal problems requiring surgery were either caused by or aggravated by the work incident that had occurred some three years prior to the operation.
¶ 6. In approximately October of 1995, Pickering also began to see Drs. Thomas Walden and Keith Atkins, who treated him for severe depression. Dr. Walden offered the opinion that, based on the history related by Pickering, the symptoms of depression appeared to have been caused by the radical alteration in Pickering’s lifestyle brought on by his debilitating injury. Pickering had related to Dr. Walden that his back problems had caused him to become an almost entirely sedentary person largely confined to a recliner and unable to undertake the kinds of physical activity that had previously marked his life. Dr. Walden admitted on cross-examination that he had not independently verified the medical severity of Pickering’s condition but had accepted Pickering’s history as accurate. He admitted that, if that history were shown not to be accurate, it would call into question his opinion as to the origins of Pickering’s condition of mental depression.
II.
Issue One: Permanent Disability
¶ 7. Pickering claims that the Commission ignored compelling evidence that he suffered permanent disabilities adversely affecting his wage-earning capacity and that the decision to deny him additional benefits extending past the time he reached maximum medical improvement was erroneous. The Commission sits as finder of fact and those findings are entitled to substantial deference when reviewed by a court conducting an appellate review. Pilate v. International Plastics Corp., 727 So.2d 771(¶ 12) (Miss. Ct.App. 1999) (citing Natchez Equip. Co., Inc. v. Gibbs, 623 So.2d 270, 273 (Miss.1993)). This Court may not re-weigh the evidence to arrive at our own independent opinion as to where the preponderance of the evidence on any particular issue might lie. Ford v. Emhart, Inc., 755 So.2d 1263(¶ 6) (Miss.Ct.App.2000) (citing Lanterman v. Roadway Exp. Inc., 608 So.2d 1340, 1345 (Miss.1992)). Rather, so long as there is substantial evidence in the record to support the finding of the Commission, our obligation is to affirm.
¶ 8. In the period following his injury, Pickering was seen by a number of physicians, including his own family physician and several specialists, who released him to return to work without restriction. It is true that Pickering was able to counter this evidence with expert opinion evidence indicating that he was, in fact, continuing to suffer from a disabling injury to his back that prevented him from obtaining employment. Pickering also testified himself that he had continued to suffer from debilitating pain that prevented his return to work. However, the Commission, in its findings of fact, placed substantial reliance on the evidence given by the multiple physicians who concluded that Pickering had fully recovered. The Commission also noted and appeared to give substantial weight to the videotape tending to indicate quite graphically that Pickering was not suffering from constant disabling pain to the extent that he contended. It is not particularly remarkable that, in a contested proceeding such as this, there will be conflicting evidence on the issues critical to decide the matter. It is the role of the Commission to weigh the credibility of the witnesses and decide what weight and worth to give to the evidence. Fisher v. Empire Gas, Inc. of Columbus, Mississippi, 770 So.2d 1002(¶16) (Miss.Ct.App. *301 2000). This Court may not substitute its own view as to what part of the evidence we might find more convincing; rather, so long as there is substantial evidence to support the findings of the Commission, our duty is to affirm. Id. We find more than ample evidence in this record to support the Commission’s finding that Pickering failed in his burden to show that he was suffering from an injury that continued to adversely impact his wage earning capacity after the point multiple treating physicians had found that he had fully recovered.
III.
Issue Two: Symptoms of Depression
¶ 9. The Commission substantially discounted the evidence of Dr. Walden that Pickering’s symptoms of depression were proximately caused by the aftereffects of his back injury on the basis that the doctor’s opinion was based largely on Pickering’s own recitation of his medical history. The Commission found as fact that Pickering’s history related to his diminished physical capacity was less than accurate and that he had grossly exaggerated his physical limitations. Rather, the Commission chose to place substantial reliance on the testimony of Dr. Keith Atkins, who was of the opinion (a) that Pickering suffered from a psychological condition referred to as pain disorder, (b) that his symptoms of depression were an outgrowth of this disorder, and (c) that the disorder could not be traced to the Cooper Tire injury.
¶ 10. Even Dr. Walden substantially undermined his own opinion on cross-examination when he conceded that his view might have been different had he been aware of the actual level of post-injury physical activity routinely engaged in by Pickering.
¶ 11. There was substantial evidence to support the Commission’s conclusion that Pickering had failed to prove the necessary causative connection between his work injury and his symptoms of depression that would render his psychological injury compensable.
IV.
Issue Three: Medical Reimbursement
¶ 12. Pickering, dissatisfied with the treatment he was receiving, continued to seek treatment from other providers without obtaining prior authorization from his employer or the employer’s compensation carrier. Dr. Senter, an orthopaedic surgeon Pickering saw on referral by Dr. McFadden, found that by May 1994 Pickering was no longer suffering from any debilitating symptoms traceable to a job-related injury and authorized him to return to work without further restriction. Despite this, Pickering persisted in seeking further treatment from Dr. McFadden and was later referred by Dr. McFadden to yet another orthopaedic specialist, Dr. McGuire, all without authorization from Cooper Tire or its carrier.
¶ 13. Pickering sought to have all his medical expenses reimbursed, including all treatment costs by Dr. McFadden and those incurred to Dr. McGuire. The Commission, on these facts, concluded that any treatment not previously authorized by the employer or the employer’s carrier obtained after May 1994 was not medically reasonable nor necessary to the process of claimant’s recovery. As such, the Commission ordered Dr. McFadden’s treatment costs through May 1994 paid but disallowed any charges incurred after that date. The Commission further ordered Dr. Senter’s treatment costs paid but held that Dr. McGuire’s treatment costs, all *302 incurred after May 1994 need not be paid by the carrier.
¶ 14. Pickering raises this as error on appeal. Based on the facts (a) that these disallowed treatments were incurred after a time when the Commission determined that Pickering had reached maximum medical recovery, (b) that Pickering had failed to seek prior approval of the carrier to consult these additional physicians (See Miss.Code Ann. § 71-3-15(1) (Rev.2000)), and (c) that the Commission was unpersuaded that this additional treatment was reasonably necessary to treat Pickering’s injury or further his recovery, we find the Commission’s decision to be within the range of discretion afforded it in such matters.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, IRVING and MYERS, JJ., concur.
CHANDLER, J., not participating.