LEE, P.J.,
for the Court.
PROCEDURAL HISTORY
¶ 1. Theresa Lipa filed a workers’ compensation claim after sustaining a work-related back injury during her employment with Omnova Solutions, Inc. A hearing was held before an administrative law judge (ALJ) who found that Lipa sustained a loss of wage-earning capacity as a result of her back injury and awarded her permanent disability benefits in the amount of $30.02 per week for 450 weeks. The award was based on the difference between the wages Lipa earned before her injury and the wages she earned for the job in which she was placed five months after returning to work at Omnova. The order entered by the ALJ also stated that Lipa was to be awarded a ten percent penalty and interest award for each installment not timely paid. Finally, Omnova was ordered to provide Lipa with all reasonable and necessary medical services and supplies that she requires due to her injury.
¶ 2. Omnova appealed the decision of the ALJ to the Mississippi Workers’ Compensation Commission (Commission). The Commission affirmed the decision of the ALJ. Omnova then appealed the order of the Commission to the Circuit Court of Lowdnes County. The circuit court affirmed the decision of the Commission.
¶ 3. Omnova now appeals, asserting the following issues: (1) the Commission erred in ruling that Lipa sustained a loss of wage-earning capacity; (2) the Commission erred in considering the testimony of Doug Pugh because his identity was not adequately disclosed before the hearing; and (3) the Commission erred in awarding Lipa penalties and interest. Finding no error, we affirm the judgment of the circuit court, which affirmed the decision of the Commission.
FACTS
¶ 4. At the time of the hearing, Lipa was forty-nine years old and had worked for Omnova for approximately eighteen years. She sustained a work-related injury on July 20, 2000, when a forklift hit her while she was performing her job as a let-off operator. She reached maximum medical improvement on July 8, 2002, after nearly two years of medical treatment. She was released to return to work on June 20, 2002, by her treating physician, Dr. Robert Smith. Dr. Smith limited Lipa to light-duty work for six months and released her to return to full-duty work after six months. She was assigned a ten percent permanent medical impairment rating to her body as a whole. Dr. Smith stated that Lipa would be permanently restricted in her lifting, standing, and bending.
¶ 5. Lipa testified that upon being released to light-duty work, she returned to her job as let-off operator. She remained at her pre-injury wage. Lipa complained of back problems to her supervisor and the company nurse, and she required help from a co-worker to perform her job. She remained in this position for approximately five months before being “bumped” by another employee with greater seniority. Lipa was transferred to a factory-trucker (forklift driver) position. The position does not require any lifting. She works more overtime than with her previous position, but the factory trucker job pays less than the let-off operator job.
STANDARD OF REVIEW
¶ 6. The standard for appellate review of workers’ compensation claims is limited. It is well settled that “[t]he Commission is the ultimate fact-finder.” Hardin’s Bakeries v. Harrell, 566 So.2d 1261, 1264 (Miss.1990). Our review is limited to a “determination of whether or not the decision of the *1003 [Cjommission is supported by the substantial evidence.” McCarty Farms, Inc. v. Banks, 773 So.2d 380, 386(¶23) (Miss.Ct.App.2000) (quoting Delta CMI v. Speck, 586 So.2d 768, 772-73 (Miss.1991)). “This Court will overturn a Commission decision only for an error of law or an unsupportable finding of fact.” Cook v. President Casino, 740 So.2d 963, 966(¶ 16) (Miss.Ct.App.1999) (citation omitted). “As to matters of law, our review is de novo, but the interpretation of the Commission of the Workers Compensation Law is to be accorded great weight and deference.” KLLM, Inc. v. Fowler, 589 So.2d 670, 675 (Miss.1991).
DISCUSSION
I. DID LIPA SUSTAIN A LOSS OF WAGE-EARNING CAPACITY?
¶ 7. Omnova concedes that Lipa was injured on the job and experienced a post-injury wage reduction. However, Omnova contends that Lipa’s wage reduction was not a result of her work-related injury. Omnova argues that Lipa lost her pre-injury job at her pre-injury wage for reasons not related to her work-related injury; therefore, she is not entitled to workers’ compensation benefits.
¶ 8. Omnova presented the testimony of Sam Cox, a vocational rehabilitation expert, in support of its position. Cox testified that Lipa did not sustain a loss of wage-earning capacity as a result of her work-related injury. Cox testified that his opinion was based on the fact that Lipa returned to her pre-injury position and pre-injury wages upon returning to work at Omnova, and that the lifting restriction only prohibited her from working in heavy to very heavy lifting categories. Cox also noted that Lipa possessed above-average education and training and remained highly employable.
¶ 9. Omnova contends that Lipa’s decrease in pay is a result of her own inac-tions because opportunities for higher paying jobs within the company have become available during the three years Lipa worked as a factory trucker, but Lipa has failed to apply for them. Kathy Brown, Omnova’s corporate representative, testified that at least two positions became available during the time Lipa worked as a factory trucker for which no employees with greater seniority applied, and Lipa could have bid on these jobs.
¶ 10. Lipa claims that the loss of her position was the result of the terms of a bargaining agreement, or union contract, between Omnova and its employees. Lipa testified that she was aware some positions were available. However, she would not bid on the position if a more senior employee had already bid, as the positions were filled based on seniority. She also did not bid if the position was outside her job restrictions. Lipa testified that she was not aware of any positions for which she was qualified that became available.
¶ 11. Doug Pugh, an employee of Om-nova for thirty-six years and the local union president, testified at the hearing on behalf of Lipa to explain the terms of the union contract. He testified that employees with restrictions were covered by the union agreement. He testified that the agreement stated that if an employee cannot find a job within her restrictions, the employee can be placed at the bottom of the seniority list for an open position, but the employee cannot bump anyone with more seniority. He explained that when Lipa was bumped by another employee, she was placed in a temporary position. When the factory-trucker position became available, Lipa was automatically placed in that position and had no choice but to take it. He testified that she was lucky a position within her restrictions was available.
*1004 ¶ 12. Omnova next asserts that the fact that Lipa returned to her pre-injury job at her pre-injury wage proved that she was not permanently disabled. When a claimant’s post-injury earnings are equal to or exceed pre-injury earnings, there is a presumption of no loss of wage-earning capacity. Univ. of Miss. Med. Ctr. v. Smith, 909 So.2d 1209, 1218(¶32) (Miss.Ct.App.2005). However, the presumption may be rebutted as follows:
The claimant may rebut the presumption by presenting evidence that the post-injury earnings are an unreliable indicator of wage[-]earning capacity because of an “increase in general wage levels since the time of accident, claimant’s own greater maturity and training, longer hours worked by claimant after the accident, payment of wages disproportionate to capacity out of sympathy to claimant, and the temporary and unpredictable character of post-injury earnings.”
Id. at 1218-19(¶ 32) (quoting Gen. Elec. Co. v. McKinnon, 507 So.2d 363, 365 (Miss.1987)).
¶ 13. Despite the fact that Lipa initially returned to her pre-injury job at her pre-injury wage of approximately $50,000 per year after the accident, we find that the Commission did not err in finding a loss of wage-earning capacity. Before working at Omnova, Lipa worked in a warehouse for approximately twelve years where she loaded boxes weighing over fifty pounds on pallets. She also worked for a glass company for one year. She graduated high school and took two night classes in the late 1970s, one in management and one in computers. Cox was unable to find any other jobs in the general labor market for a person with Lipa’s education and experience that would pay a comparable salary. According to Cox’s testimony, if Lipa were not able to work at Omnova, she would suffer a loss of wage-earning capacity.
¶ 14. After reviewing Lipa’s age, education, work history, and physical restrictions, it is apparent that she has suffered a loss in wage-earning capacity. We find that the Commission’s findings were based on substantial evidence. Therefore, we find that this issue is without merit.
II. WAS DOUG PUGH PROPERLY ALLOWED TO TESTIFY?
¶ 15. At the hearing, Lipa offered the testimony of Pugh, the president of Lipa’s local union, who testified that Lipa’s transfer was a result of the terms of the union contract. Pugh also testified that Lipa was prohibited from bidding on another job within the plant because of the union contract. Omnova argues that because Lipa failed to disclose Pugh’s identity in her discovery responses or pre-hear-ing statement, Pugh’s testimony should have been stricken.
¶ 16. “Mississippi Workers’ Compensation Commission Rule 5, subpart IV states that each party must submit a pretrial statement that sets forth the names and address of each lay witness expected to testify except those to be called for impeachment or rebuttal purposes.” Mid-Delta Home Health, Inc. v. Robertson, 749 So.2d 379, 386(¶ 28) (Miss.Ct.App.1999). In discussing the procedural rules of the Commission, this Court, quoting the supreme court, has held as follows:
We emphasize that the Commission is an administrative agency, not a court. It has broad discretionary authority to establish procedures for the administration of compensation claims. It has like authority to relax and import flexibility to those procedures where in its judgment such is necessary to implement and [ajffect its charge under the Mississippi Workers’ Compensation Act. It is a rare day when we will reverse the Com *1005 mission for an action taken in the implementation and enforcement of its own procedural rules.
Id. at 387(¶ 30) (quoting Delta Drilling Co. v. Cannette, 489 So.2d 1378, 1380-81 (Miss.1986)).
¶ 17. At the hearing, counsel for Lipa told the ALJ that he had notified counsel for Omnova over the phone that Pugh would be called as a witness. Counsel for Omnova agreed that he was notified of this one week before the hearing. Counsel for Lipa faxed the employment contract language that would be the source of Pugh’s testimony to Omnova’s counsel. While Omnova claims that it did not have sufficient time to prepare a cross-examination, depose Pugh, or produce witnesses to rebut his testimony, Omnova was aware that testimony would be given regarding the union contract. Omnova presented its own witness, Brown, to rebut Pugh’s testimony, and Omnova introduced documents in support of its position. We cannot find that Omnova was surprised or prejudiced by the Commission’s decision to allow Pugh to testify.
¶ 18. Given the Commission’s ability to relax its procedures when appropriate, we find that it was within the Commission’s discretion to allow Pugh to testify. We find that this issue is without merit.
III. DID THE COMMISSION ERR IN AWARDING PENALTIES AND INTEREST ON THE AWARD OF BENEFITS?
¶ 19. Omnova asserts that the Commission erred in assessing penalties and interest on the award of benefits since, at the time of the order, no payments were yet due or owing to Lipa.
¶20. In its findings dated January 3, 2007, the Commission ordered Omnova to pay workers’ compensation benefits to Lipa as follows:
Permanent disability benefits of $30.02 beginning July 9, 2002, and continuing for a period of 450 weeks as compensation for the disability [that the] claimant sustained from her work injuries. There shall be added to each installment of compensation not timely paid the equivalent of ten percent (10%) thereof as provided in Miss.Code Ann. § 71-3-37(5) (as amended) together with interest at the legal rate from and after the date such compensation was due.
¶ 21. Omnova asserts that it had paid all total temporary disability and medical benefits that had accrued at the time of the ruling by the Commission. Therefore, it argues that there was no basis for an assessment of penalties or interest.
¶ 22. Mississippi Code Annotated section 71-3-37(5) (Supp.2008) states:
If any installment of compensation payable without an award is not paid within fourteen (14) days after it becomes due, as provided in subsection (2) of this section, there shall be added to such unpaid installment an amount equal to ten percent (10%) thereof, which shall be paid at the same time as, but in addition to, such installment unless notice is filed under subsection (4) of this section, or unless such nonpayment is excused by the [CJommission after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.
Section 71-3-37 lists three circumstances in which an employer is not required to pay the ten percent penalty. First, the penalty is not assessed if the employer has paid compensation installments within fourteen days of being put on notice of the injury or death; second, and in the alternative, the employer filed a notice to controvert within fourteen days of the day he received notice of the injury or death; or', *1006 third, by showing the Commission that the nonpayment was the result of conditions over which the employer had no control. Miss.Code Ann. § 71-3-37(2), (4), and (5); see also South Cent. Bell Tel. Co. v. Aden, 474 So.2d 584, 597 (Miss.1985).
¶ 23. Omnova has not claimed any of the exceptions listed in section 71-3-37. Therefore, we find that the Commission correctly assessed the ten percent penalty and interest. We find that this issue is without merit.
¶ 24. THE JUDGMENT OF THE LOWDNES COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., IRVING, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. GRIFFIS AND MAXWELL, JJ., NOT PARTICIPATING.