# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-WC-01264-COA

CHARLES WRIGHT                                                                     APPELLANT

v.

TURAN-FOLEY MOTORS, INC., MISSISSIPPI                              APPELLEES
AUTOMOBILE DEALERS ASSOCIATION, AND
DR. RAHUL VOHRA

DATE OF JUDGMENT:                    08/03/2016
TRIBUNAL FROM WHICH                  MISSISSIPPI WORKERS' COMPENSATION
APPEALED:                            COMMISSION
ATTORNEYS FOR APPELLANT:             ROGEN K. CHHABRA
                                     DARRYL MOSES GIBBS
                                     CAROLINE JANE SCOTT
                                     AMANDA GRACE HILL
                                     RAYNETRA LASHELL GUSTAVIS
ATTORNEYS FOR APPELLEES:             KARL R. STEINBERGER
                                     STACIE ELIZABETH ZORN
                                     WALTER T. JOHNSON
                                     WILLIAM ABRAM ORLANSKY
NATURE OF THE CASE:                  CIVIL - WORKERS' COMPENSATION
DISPOSITION:                         AFFIRMED IN PART; REVERSED AND
                                     RENDERED IN PART - 01/23/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**WILSON, J., FOR THE COURT:**

¶1.     The Mississippi Workers' Compensation Commission denied Charles Wright's claim

for disability benefits after finding that he failed to meet his burden of proving a causal

connection between his employment and a disabling condition.  On appeal, Wright argues

that the Commission's decision should be reversed because it is not supported by substantial

evidence. Wright also argues that the Commission erred by quashing a subpoena that he served on Dr. Rahul Vohra, who had performed an employer's medical examination (EME) in this case. The subpoena sought documents and other information concerning Dr. Vohra's compensation in an effort to demonstrate bias. Wright further argues that the Commission erred by denying his motion to exclude Dr. Vohra's testimony after Dr. Vohra refused to answer deposition questions on matters covered by the subpoena. Finally, Wright argues that the Commission erred by ordering his attorney to pay Dr. Vohra's attorney's fees and a $5,000 "civil penalty" as sanctions for the subpoena and deposition questioning of Dr. Vohra.

¶2. We hold that the Commission's decision is supported by substantial evidence and that the Commission did not commit any reversible error by quashing the subpoena or by denying Wright's motion to exclude Dr. Vohra's testimony. Therefore, we affirm the Commission's decision denying Wright's claim for benefits. However, we hold that the Commission erred by sanctioning Wright's attorney. Therefore, we reverse and render the Commission's imposition of a civil penalty and award of attorney's fees.

### FACTS AND PROCEDURAL HISTORY

¶3. Wright worked as an auto mechanic at Turan Foley Motors in Gulfport. He had forty-two years of experience in the industry and specialized in front suspension. Wright testified that on Friday, October 25, 2013, he was busier and his work was more strenuous than usual because General Motors was having "vibration issues" in some of its newer vehicles. The next morning, he woke up with pain in his back and knees, and his right knee was swollen. Wright was not scheduled to work that weekend, but he went in to work and left a note to

2

report the injury. Wright did not experience any fall, accident, or other traumatic event at work, but he assumed that the pain and swelling were caused by the strain of his work. On Monday, October 28, Wright went to see his pain management doctor, Dr. Brian Dix. Wright had been seeing Dr. Dix for back and knee pain three to four times a year for several years, and he had already scheduled an appointment with Dr. Dix for October 28 prior to his alleged injury on October 25.[1]

¶4.     After seeing Dr. Dix, Wright continued working at Turan Foley without restriction. On December 5, 2013, Wright reported that he felt a sharp pain in his left knee as he was sliding out from underneath a car. Wright did not see a doctor about his knee until his next regularly scheduled appointment with Dr. Dix on January 14, 2014. Wright next went to see an orthopedist, Dr. George Salloum, in April 2014.

¶5.     Wright testified that after the December 5, 2013 incident, his knees became too painful to continue working, and he retired on December 18, 2013, at the age of fifty-nine. However, another employee, Ken Monroe, testified that Wright was already planning to retire by at least November. Wright's supervisor, Ken Riverbank, testified that Wright did not mention any physical problems when he told Riverbank that he was retiring.

¶6.     On September 16, 2014, Wright filed a petition to controvert, alleging that he suffered compensable injuries to his back and lower extremities in October 2013. Turan Foley[2]

_____

[1] Wright's petition to controvert alleged that his injury occurred on Friday, October 18, but other evidence indicated that October 25 was the relevant day. This discrepancy is not material to any of the issues in this appeal.

[2] Turan Foley's insurance carrier is also a party. We refer to the employer and carrier collectively as Turan Foley.

denied that Wright had suffered any compensable injury, and the case proceeded to a hearing on the merits of Wright's claim, held before an Administrative Judge (AJ) on September 24, 2015. Wright, Monroe, and Riverbank testified at the hearing, and the parties stipulated that Wright's wife would corroborate his testimony about his injuries and back and knee pain. Wright's deposition and medical records and Dr. Dix's deposition were also admitted into evidence. The AJ left the record open only for the deposition testimony of Dr. Rahul Vohra, who had performed an employer's medical examination (EME).

¶7.     Dr. Dix is board certified in osteopathic medicine and anesthesiology and specializes in pain management. He has treated Wright regularly since Wright came to him with back pain, knee pain, and leg pain (radiculopathy) in 2002. Wright was already wearing a back brace and two knee braces in 2002, and Dr. Dix prescribed him medication and recommended epidural steroid injections for his pain. By 2005, Wright had suffered two herniated discs in his lower back, and he was offered surgery but declined. Dr. Dix testified that "the natural progression" of Wright's injuries would be "to get progressively worse, irregardless of what you do." In 2008, Dr. Dix saw Wright for additional bilateral knee pain, and he referred Wright to an orthopedist for treatment. Dr. Dix recommended a different, more supportive type of back brace in 2009.

¶8.     Dr. Dix continued treating Wright for the same conditions for the next few years and on October 28, 2013, he observed swelling in Wright's right knee but no other changes to the condition of Wright's knees or back. Dr. Dix again referred Wright to an orthopedist.

¶9.     In a written questionnaire dated May 12, 2015, Dr. Dix answered "Yes" to the

4

question, "Do you feel that Mr. Wright's injuries and your treatment are causally related to his employment and work injury at Turan Foley Motors, Inc.?" In his deposition, Dr. Dix testified that the "work injury" to which his answer referred was a 2003 work injury. In the questionnaire, Dr. Dix also explained his "Yes" answer by stating that Wright's herniated discs, which Wright suffered no later than 2005, "occurred most likely while working."[3]

¶10.    Dr. Salloum also treated Wright for knee pain in 2011 and 2014. Dr. Salloum's records were admitted into evidence, but Dr. Salloum did not testify. In an April 2014 progress note, Dr. Salloum stated that Wright had "severe tricompartmental osteoarthritic changes in both knees," and he recommended injections in both knees. Dr. Salloum also stated that Wright ultimately might require a left knee replacement.

¶11.    Dr. Vohra examined Wright in June 2015. Dr. Vohra reviewed Wright's medical records, a 2005 MRI, and lumbar and knee x-rays taken on the day of the examination. Dr. Vohra's EME report discussed Wright's significant history of back and knee pain issues dating back to at least 2002. Dr. Vohra also noted that Wright received bilateral knee injections in 2011.

¶12.    Dr. Vohra concluded that Wright's "current back pain complaints are consistent with the ongoing back pain he has had since 2002." Dr. Vohra found "no evidence that there has been any material change in [Wright's] clinical condition." Rather, Wright "continues to have chronic mechanical back pain," which "is a longstanding preexisting issue."

---

[3] At oral argument in this Court, counsel for Wright contended that later in his deposition, in response to a leading question, Dr. Dix attributed Wright's condition to the alleged October 2013 injury. However, the testimony cited by counsel appears to address a different exhibit and is, at best, ambiguous.

¶13. Dr. Vohra also concluded, based on his review of Wright's medical records and x-rays, that Wright's knee pain was the result of "chronic degenerative changes" and not the result of "any accident or injury at work" in 2013. Dr. Vohra found that Wright had "no impairment or restrictions based on an alleged work incident." Dr. Vohra agreed with Dr. Salloum that Wright needed a left knee replacement surgery, but Dr. Vohra concluded that Wright's left knee condition was "not related to a work issue."

¶14. Dr. Vohra's deposition testimony was consistent with his EME report. Dr. Vohra testified that Wright's back and knee conditions were degenerative and preexisting and were not caused or aggravated by any incident or injury at work in 2013. He also testified that the knee swelling that Wright experienced in October 2013 was consistent with the arthritic condition of his knees. Dr. Vohra testified that a strenuous day at work in October 2013 might have "exacerbate[d]" Wright's condition, but it would not have "aggravate[d] it." Dr. Vohra explained that an "[e]xacerbation is a temporary increase in symptoms from an underlying . . . condition," whereas an "aggravation is an event that actually changes the course of the underlying" condition.

¶15. Prior to Dr. Vohra's deposition, Wright served him with a subpoena that commanded him to produce several categories of documents, primarily related to his compensation for performing EMEs or independent medical examinations (IMEs) or testifying as an expert witness. Turan Foley had designated Dr. Vohra to conduct an EME by at least April 13, 2015,[4] and Dr. Vohra examined Wright and issued his report on June 5, 2015. Nonetheless,

---

[4] Turan Foley's pre-hearing statement filed on April 13, 2015, noted that Dr. Vohra's EME was scheduled for June 5, 2015.

Wright did not serve Dr. Vohra with a subpoena until October 22, 2015—nearly a month after the merits hearing before the AJ.

¶16.   Dr. Vohra retained counsel who entered an appearance and filed a motion to quash the subpoena or for a protective order.  Dr. Vohra argued that the subpoena sought irrelevant information, was overly broad and unduly burdensome, and was intended "to harass and intimidate [him] in an attempt to discourage him from" participating in workers' compensation cases.  Turan Foley filed a joinder in Dr. Vohra's motion.  Wright filed a response to Dr. Vohra's motion.  Wright also filed a motion to strike the entry of appearance entered by Dr. Vohra's lawyers, arguing that an attorney for a nonparty is not entitled to enter an appearance in a proceeding before the Commission.

¶17.   Dr. Vohra was deposed on November 3, 2015, while his motion to quash was still pending.  In his deposition, Dr. Vohra acknowledged that in a prior, unrelated case he voluntarily produced a list of all IMEs and EMEs he had performed in 2012 and 2013 with the amount and source of his compensation for each examination.  The list, which was made an exhibit to Dr. Vohra's deposition in this case, showed total compensation of $603,466 for the two-year period, all paid by employers or carriers.  Dr. Vohra testified that it had been an "[e]normous task" to compile the information, requiring "[d]ays" of work by "several people."  He testified that he was unwilling to make such disclosures again voluntarily, which was why he hired counsel to oppose the subpoena.  Wright's attorney asked Dr. Vohra whether he had ever done any work for any claimant's attorney, and Dr. Vohra could identify only three.  Other than confirming that the list was the same document that he had provided

7

in a prior case, Dr. Vohra refused, on advice of counsel, to answer any questions on subjects covered by the pending motion to quash. After Dr. Vohra's deposition, Wright filed a motion to exclude or strike Dr. Vohra's deposition based on his refusal to answer questions.

¶18.    The AJ subsequently entered a forty-one page order denying Wright's claim. The AJ found that Wright "failed to meet his burden of proof that he suffered work related injuries to his back and/or knees." The AJ found that the evidence was "clear that [Wright] had a long history of back and knee problems and had received extensive treatment in the past," and "[w]hile his arthritis and underlying conditions may have worsened over the years, his diagnosis remained essentially the same." The AJ's opinion also discussed Dr. Vohra's testimony that Wright's injuries were not related to his work.

¶19.    The AJ also entered an order quashing Wright's subpoena to Dr. Vohra. The AJ acknowledged that Wright was "entitled to explore bias" and that Dr. Vohra's compensation "may be relevant" to that issue. However, the AJ found that the issue had "been sufficiently explored in this case" and that Wright's "oppressive purpose in serving the subpoena [was] clear." The AJ expressed concern that it was already difficult to find physicians willing to perform IMEs and EMEs and that requiring physicians to respond to such subpoenas would deter them from participating in workers' compensation cases. The AJ found that the subpoena should be quashed because it was "unreasonable and oppressive." For the same reasons, the AJ also denied Wright's motion to exclude or strike Dr. Vohra's deposition. Finally, the AJ denied Wright's motion to strike the entry of appearance by Dr. Vohra's counsel.

8

¶20. Wright filed a petition for review by the full Commission. In his petition, Wright argued that the AJ erred by finding that he failed to prove a compensable injury; by quashing his subpoena to Dr. Vohra; by denying his motion to exclude or strike Dr. Vohra's testimony; and by denying his motion to strike the entry of appearance by Dr. Vohra's counsel. Turan Foley and Dr. Vohra both filed responses to Wright's petition. Dr. Vohra also requested an award of attorney's fees and expenses pursuant to Commission Procedural Rule 18(g).

¶21. The Commission affirmed the AJ's order denying Wright's claim. The Commission reviewed the testimony and medical evidence and agreed with the AJ that Wright failed to meet his burden of proving any compensable injury. The Commission's opinion also "affirm[ed] and incorporate[d] the findings of the [AJ]."

¶22. The Commission also affirmed the AJ's orders related to the subpoena and deposition of Dr. Vohra. As to the subpoena, the Commission "agree[d] with the findings of the [AJ]," including that "the issue of bias had been sufficiency explored." The Commission "further [found] that the discovery sought by [Wright] from Dr. Vohra was not 'relevant or competent evidence' necessary for the resolution of the present claim." (Quoting Commission Procedural Rule 8(g)). As to the motion to exclude or strike Dr. Vohra's deposition, the Commission agreed with the AJ that "the financial information sought by [Wright's] counsel was oppressive and not necessary for resolution of the claim."

¶23. The Commission also sanctioned Wright's attorney, ordering him to pay Dr. Vohra's attorney's fees and "an additional civil penalty" of $5,000. The Commission imposed the sanctions pursuant to Commission Procedural Rule 18(g) and Mississippi Code Annotated

9

section 71-3-59(2) (Rev. 2011). The Commission reasoned that sanctions were appropriate because the subpoena and deposition questioning of Dr. Vohra were "unwarranted and oppressive in nature and without reasonable ground" and were directed to "financial issues not related to the claim."

¶24. Wright filed a notice of appeal from the final decision of the Commission. Both Turan Foley and Dr. Vohra have filed briefs as appellees.

**ANALYSIS**

¶25. On appeal, Wright argues that the Commission's decision on the merits of his claim was not supported by substantial evidence. Wright also raises multiple issues related to the subpoena to and deposition of Dr. Vohra. Indeed, most of Wright's opening brief and almost all of his reply brief are devoted to issues related to the subpoena or deposition. He alleges that, at minimum, he is entitled to a "new trial," because the Commission erred by quashing his subpoena and by denying his motion to strike or exclude Dr. Vohra's testimony. He also argues that the Commission erred by imposing sanctions on his attorney. We address these issues in turn.

**I.      The Commission's decision is supported by substantial evidence.**

¶26. In workers' compensation cases, "[t]his Court's review is limited to determining whether the Commission's decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated [a party's] constitutional or statutory rights . . . . [T]he Commission is the ultimate fact-finder and judge of the credibility of witnesses; therefore, we may not reweigh the evidence that was before

10

the Commission." *Pulliam v. Miss. State Hudspeth Reg'l Ctr.*, 147 So. 3d 864, 868 (¶16) (Miss. Ct. App. 2014) (citations and quotation marks omitted). "When the Commission's decision is supported by substantial evidence, . . . it must be upheld. This remains true even though we might have reached a different conclusion were we the trier of fact." *Parker v. Ashley Furniture Indus.*, 164 So. 3d 1081, 1083-84 (¶11) (Miss. Ct. App. 2015) (quoting *Smith v. Johnston Tombigbee Furniture Mfg. Co.*, 43 So. 3d 1159, 1164 (¶15) (Miss. Ct. App. 2010)). On issues of fact, "[t]his Court will overturn a Commission decision only" if the Commission's finding is "unsupportable." *Harper ex rel. Harper v. Banks, Finley, White & Co. of Miss. P.C.*, 167 So. 3d 1155, 1162 (¶18) (Miss. 2015) (quoting *Ga. Pac. Corp. v. Taplin*, 586 So. 2d 823, 826 (Miss. 1991)).

¶27. In a workers' compensation case, the claimant bears the burden of proving "(1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and . . . claimed disability." *Id.* at (¶19). "In all but the simple and routine cases, it is necessary to establish medical causation by expert testimony. A claim of disability must be supported by medical findings" *Tate v. Int'l Paper Co.*, 194 So. 3d 136, 139 (¶15) (Miss. Ct. App. 2015) (quoting *Clark v. Spherion Corp.*, 11 So. 3d 774, 778 (¶16) (Miss. Ct. App. 2009)) (alteration omitted).

¶28. Furthermore, "[w]here there is conflicting medical testimony, the Commission has the responsibility to apply its expertise and determine which evidence is more credible." *Washington v. Woodland Vill. Nursing Home*, 25 So. 3d 341, 355 (¶33) (Miss. Ct. App. 2009) (quoting *Wesson v. Fred's Inc.*, 811 So. 2d 464, 469 (¶23) (Miss. Ct. App. 2002)).

11

Therefore, "[w]here medical expert testimony is concerned, [the Supreme] Court has held that whenever the expert evidence is conflicting, the Court will affirm the Commission whether the award is for or against the claimant." *Raytheon Aerospace Support Servs. v. Miller*, 861 So. 2d 330, 336 (¶13) (Miss. 2003) (quoting *Kersh v. Greenville Sheet Metal Works*, 192 So. 2d 266, 268 (Miss. 1966)); *accord Hardaway Co. v. Bradley*, 887 So. 3d 793, 796-97 (¶¶15-20) (Miss. 2004).

¶29. In the present case, there is substantial evidence to support the Commission's finding that Wright failed to meet his burden of proving that he sustained a work-related injury that aggravated any of his preexisting conditions. Wright acknowledges that he has longstanding, preexisting knee and back issues. And Dr. Vohra testified that Wright's present conditions and pain are the result of those longstanding, chronic, degenerative issues—not any work-related accident or injury in October 2013.

¶30. Moreover, Wright offered no substantial evidence to support a finding of causation. Wright assumes a causal relationship between swelling in his knee and his work the prior day. Wright further assumes that the swelling in his knee reflected an aggravation of his knee condition, rather than just temporary swelling that was a symptom of that preexisting condition. Wright also emphasizes that Dr. Salloum, who did not testify, recommended knee replacement surgery in April 2014. Based on this, Wright assumes that the need for knee replacement surgery must be attributable to his alleged injury in October 2013.

¶31. However, there is no medical evidence or expert opinion to support Wright's assumptions and suppositions. Dr. Vohra testified that although Wright experienced

12

temporary pain and swelling in October 2013, there was no permanent aggravation of his underlying conditions, which remained unchanged. As noted above, Dr. Dix's testimony on the subject was, at best, ambiguous and contradictory. In addition, Dr. Salloum did not testify, and there is nothing in his records to support a finding of causation.

¶32. Given Wright's long history of preexisting back and knee problems, this was far from a "simple and routine case[]" on the issue of medical causation. *Tate*, 194 So. 3d at 139 (¶15). Therefore, Wright was required "to establish medical causation by expert testimony." *Id.* There is substantial evidence to support the Commission's finding that Wright failed to meet his burden of proof. Moreover, "whenever the expert evidence is conflicting, the Court will affirm the Commission whether the award is for or against the claimant." *Raytheon*, 861 So. 2d at 336 (¶13) (quoting *Kersh*, 192 So. 2d at 268). Therefore, even if we assume that Wright presented *some* competent evidence of medical causation, it was up to the Commission, as the finder of fact, to determine which evidence was credible and persuasive.

**II. The Commission did not err by quashing Wright's subpoena to Dr. Vohra or by denying Wright's motion to strike or exclude Dr. Vohra's deposition.**

¶33. In general, evidence of an expert witness's possible financial or economic bias is relevant and admissible. Therefore, an expert witness may be cross-examined about how much he or she has been paid in the pending case, how frequently he or she testifies as an expert, and how often he or she testifies for plaintiffs, defendants, doctors, etc. *See Wells v. Tucker*, 997 So. 2d 908, 916-17 (¶29) (Miss. 2008) (quoting *Wells v. Tucker*, 997 So. 2d 925, 940 (¶¶55-56) (Miss. Ct. App. 2007) (Griffis, J., dissenting)). Our Supreme Court has made

13

clear that "liberal cross-examination regarding bias, interest, and previous experience as an expert . . . should be allowed." *McCarty v. Kellum*, 667 So. 2d 1277, 1286 (Miss. 1995) (quoting *Hall v. Hilbun*, 466 So. 2d 856, 875 (Miss. 1985)) (alteration omitted).

¶34. However, this appeal does not involve a simple dispute over the permissible scope of cross-examination of an expert witness. There are two primary rulings at issue in this appeal. First, the Commission declined to compel Dr. Vohra to comply with a subpoena duces tecum (a) that commanded him to produce extensive financial documents and business records, (b) that was overly broad and unduly burdensome on its face, and (c) that Wright served after the hearing on the merits of his claim. Second, the Commission ruled that Dr. Vohra's refusal to answer questions about his income from performing EMEs and providing expert testimony did not warrant the wholesale exclusion of his testimony. For the reasons explained below, we find no reversible error in either of these rulings.

¶35. At the outset, "[w]e emphasize that the Commission is an *administrative agency*, not a court. It has broad discretionary authority to establish procedures for the administration of compensation claims." *Mid-Delta Home Health Inc. v. Robertson*, 749 So. 2d 379, 387 (¶30) (Miss. Ct. App. 1999) (quoting *Delta Drilling Co. v. Cannette*, 489 So. 2d 1378, 1380-81 (Miss. 1986)). Therefore, "[i]t is a rare day when we will reverse the Commission for an action taken in the implementation and enforcement of its own procedural rules." *Id.* To be certain, the Commission must ensure that it affords due process to the parties in all cases. *Robinson Prop. Grp. Ltd. P'ship v. Newton*, 975 So. 2d 256, 260 (¶8) (Miss. Ct. App. 2007). However, the Commission has considerable discretion, and its rulings on procedural and

14

evidentiary issues and discovery matters are entitled to deference. *See, e.g.*, *Rankin v. Averitt Exp. Inc.*, 115 So. 3d 874, 877 (¶13) (Miss. Ct. App. 2013); *Robinson Prop. Grp.*, 975 So. 2d at 260 (¶8); *Bermond v. Casino Magic*, 874 So. 2d 480, 484-85 (¶11) (Miss. Ct. App. 2004); *Posey v. United Methodist Senior Servs.*, 773 So. 2d 976, 979 (¶9) (Miss. Ct. App. 2000); *Mid-Delta Home Health*, 749 So. 2d at 387 (¶29).

¶36.    As discussed above, Turan Foley disclosed that it had retained Dr. Vohra to perform an EME in this case by at least April 2015, Dr. Vohra examined Wright and issued his report in June 2015, and the hearing on the merits before the AJ was held in September 2015. The record in the case was then closed and complete with the exception of Dr. Vohra's deposition. Nonetheless, Wright did not serve Dr. Vorha with a subpoena until a month after the hearing before the AJ.[5] The subpoena sought the following categories of documents:

- all documents indicating any income that Dr. Vohra earned from services rendered by or at the request of Turan Foley or the law firm representing it in the five preceding years;

- copies of any medical malpractice complaint filed against Dr. Vohra in any court;

- "[c]opies of all 1099's, profit and loss statements, internal memoranda or other financial documents which indicate, address or outline the income [that Dr. Vohra had] received from," inter alia, for IMEs or

---

[5] On appeal, Wright accuses the Commission of "forc[ing] the natural progression of discovery and litigation to be turned on its head." Reply Br. at 2. Specifically, he accuses the AJ of "refus[ing] to hear arguments on the motion to quash before or during the hearing on the merits," and he claims that the AJ "allowed the record to remain open until the deposition for Dr. Vohra to be taken *before* ruling on whether the subpoena had to be responded to." These criticisms of the Commission and the AJ are unfounded. Wright did not serve the subpoena until after the hearing on the merits, so it would have been *impossible* for the AJ "to hear arguments on the motion to quash before or during the hearing on the merits."

15

EMEs performed for any employer or carrier and "[a]ny other payments from liability insurance companies for any consultation work" in the five preceding years;

- "[a]ll documents, including receipts for payment, honorariums or reimbursement for travel expenses, for any programs or conferences, sponsored by any liability or workers' compensation insurance company or industry group where [Dr. Vohra had] spoken or presented in the last five (5) years on any issues involving civil justice, [IMEs or EMEs], physical impairment or restrictions and/or rehabilitation of injured patients";

- "[a]ny and all printouts, reports, cancelled checks, drafts, or other documents evidencing, relating or pertaining to any payment of compensation to [Dr. Vohra] to review medical records and/or to render opinions and/or to testify as an expert witness at any court proceeding within the past five years";

- Dr. Vohra's "time sheets and copies of any and all other documentation setting forth the hours for which [he] performed services of any kind in [this] case," as well as all "invoices or documentation of and records of payment received for services rendered in [this] case (including those billed but not yet collected, and those expected to be billed)";

- any learned treatises, articles, or authorities relied on by Dr. Vohra in rendering opinions in this case.

¶37. We agree with the Commission that this command to Dr. Vohra to produce five years' worth of financial documents, including even 1099s and "cancelled checks," was overly burdensome and unduly broad on its face. Therefore, we cannot say that the Commission's ruling quashing the subpoena was an abuse of discretion or a denial of due process or any other right.

¶38. In their briefs on appeal, Dr. Vohra and Wright cite several decisions of courts in other states that have addressed the discoverability of information about the income and

16

sources of income of an expert witness.[6]  However, the cited opinions are not directly applicable to the facts of this case, which do not involve a typical pretrial discovery dispute. As it was presented to the Commission, the issue in this case was whether to reopen the record in an otherwise-concluded workers' compensation proceeding to compel Dr. Vohra to produce voluminous information and documents pertaining to his income as an expert witness.  Moreover, the record already contained evidence that employers and carriers had paid Dr. Vohra over $600,000 for performing IMEs and EMEs in the years 2012 and 2013. On these facts, the Commission, which was also the finder of fact, affirmed the AJ's finding that "the issue of bias had been sufficiently explored" in this case.

¶39.    We cannot say that the Commission's ruling was an abuse of discretion or a denial of due process.  The record in the case was otherwise closed by the time the issue was raised, and the Commission, as fact-finder, had before it information that it reasonably deemed sufficient to address the issue of bias.  The Commission was not required to reopen the proceeding to compel Dr. Vohra to comply, in whole or in part, with a subpoena that was overly broad and unduly burdensome on its face.

¶40.    For essentially the same reasons, the Commission did not abuse its discretion or deny due process when it affirmed the denial of Wright's motion to strike or exclude Dr. Vohra's testimony in toto.  The partial dissent argues that Dr. Vohra should have filed a motion to terminate or limit the deposition pursuant to Mississippi Rule of Civil Procedure 30(d)

---

[6] *See, e.g.*, *Primm v. Isaac*, 127 S.W.3d 630, 635-37 (Ky. 2004); *Elkins v. Syken*, 672 So. 2d 517, 520-22 (Fla. 1996); *see also* Fed. R. Civ. P. 26(a)(2)(B)(v)-(vi) (requiring disclosure of the expert's compensation in the pending case and a list of all cases in which the expert has testified in the previous four years).

instead of simply refusing to answer certain questions.[7] That may be true, but if so, Wright's primary remedy was a motion to compel Dr. Vohra to answer additional questions and for attorney's fees and expenses pursuant to Rule 37(a).[8] Wright never requested that relief before the AJ or the Commission. Instead, he sought only to strike or exclude Dr. Vohra's testimony in its entirety.[9] Neither Wright nor the partial dissent cites any authority for the

---

[7] *See* M.R.C.P. 30(d) ("At any time during the taking of the deposition, on motion of . . . the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent . . . , the court in which the action is pending may order the officer conducting the examination to cease forthwith from taking the deposition or may limit the scope and manner of the taking of the deposition . . . ."); *Pilate v. Am. Federated Ins.*, 865 So. 2d 387, 400 (¶68) (Miss. Ct. App. 2004) ("The discovery rules of the Mississippi Rules of Civil Procedure are applicable to litigated workers' compensation claims.").

[8] *See* M.R.C.P. 37(a)(2) ("If a deponent fails to answer a question . . . , the discovering party may move for an order compelling an answer . . . . When taking a deposition on oral examination, the proponent of the question may complete or adjourn the examination before he applies for an order."); M.R.C.P. 37(a)(4) ("If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust."); *see also* 8A Charles Alan Wright, Arthur R. Miller et al., *Federal Practice and Procedure* § 2116 (3d ed. 2010) ("An alternative method by which a court ruling upon the propriety of the examination may be obtained is by refusal of the witness to answer particular questions, thus provoking a motion under Rule 37(a) to compel an answer. . . . Although there is thus a substantial preference for requiring that deponents apply to the court for protection rather than simply refusing to answer questions, it is to be hoped that the courts will take a realistic view of the conduct of depositions rather than foreclose deponents' objections in response to motions to compel answers.").

[9] During Dr. Vohra's deposition, Wright's counsel stated that he would file a motion to compel Dr. Vohra to answer additional questions and for costs and attorney's fees; however, in his subsequent motion, Wright requested only that Dr. Vohra's deposition be excluded or stricken in its entirety.

proposition that the *only* permissible remedy for a nonparty's refusal to answer deposition questions is to strike or exclude the nonparty's testimony *in its entirety*. There is no such rule of automatic, wholesale exclusion. Wright did not request the relief to which he might have been entitled under Rule 37(a), and we cannot say that the Commission abused its discretion or otherwise erred by denying the extraordinary relief that Wright did seek.

¶41. The partial dissent next argues that the Commission should have excluded Dr. Vohra's deposition based on "the four-factor test applicable to determine whether excluding evidence for a transgression in discovery is an appropriate sanction." *Post* at (¶59). However, Wright himself has never relied on that test, which addresses the exclusion of evidence as a sanction for a discovery violation by a party. Here, the party—Turan Foley—did not commit any discovery violation. Dr. Vohra was a nonparty witness selected by Turan Foley to perform an EME.[10] After Wright served a subpoena on Dr. Vohra personally, Dr. Vohra filed his own motion to quash the subpoena, and he then relied on the advice of his personal counsel to refuse to answer questions on matters covered by his pending motion. "[E]xcluding evidence for a transgression in discovery is an extreme measure." *Miss. Power & Light Co. v. Lumpkin*, 725 So. 2d 721, 733 (¶60) (Miss. 1998). Again, there is no rule requiring a trial judge or an administrative tribunal to impose such an "extreme" sanction on a party based on a nonparty witness's independent decision to refuse to answer deposition questions.

¶42. Finally, the partial dissent argues that the Commission violated its "own procedural rules" by admitting Dr. Vohra's testimony. *Post* at (¶61). However, no rule of the

_____

[10] *See* Miss. Code Ann. § 71-3-15(1) (Supp. 2017); Commission General Rule 9; Bradley & Thompson, *Mississippi Workers' Compensation Law* § 5:75 (2017 ed.).

19

Commission required the exclusion of Dr. Vohra's testimony. Put simply, no rule, statute, or precedent required the Commission to impose the "extreme" sanction advocated by the partial dissent. We again note that Wright could have moved to compel Dr. Vohra to answer additional questions and for attorney's fees and costs. Such a motion would have directly addressed the alleged deficiencies in Dr. Vohra's testimony, and some relief might have been warranted. However, Wright did not file such a motion, so that issue is not before us on appeal.

¶43. We also emphasize that an expert witness may be required to testify about how much he or she has been paid in the pending litigation, how often he or she serves as an expert, and how often he or she testifies for plaintiffs/claimants, defendants/employers/carriers, doctors, etc. *See Wells*, 997 So. 2d at 916-17 (¶29). These are relevant and permissible questions in a deposition or on cross-examination. However, this appeal does not involve a simple dispute over the permissible scope of cross-examination. For the reasons discussed above, we cannot say that the Commission committed reversible error by quashing Wright's late-served subpoena or denying his motion to exclude Dr. Vohra's testimony in toto.[11]

---

[11] Citing Mississippi Code Annotated section 71-3-55(2) (Rev. 2011), Wright also argues that the Commission's ruling on the subpoena "must be vacated and rendered because the Commission failed to record and transcribe the hearing on the issue." Section 71-3-55(2) provides in relevant part: "Hearings before the [C]ommission shall be open to the public and shall be stenographically reported or recorded and transcribed." In this case, the only "hearings" on Wright's subpoena were a telephonic conference with the AJ and oral argument on Wright's petition for review by the full Commission. No testimony or other evidence was received during either "hearing." We do not understand Wright's argument to be that either of those "hearings"—which apparently consisted only of the arguments of counsel—should have been recorded or transcribed. Wright did not raise that issue before the Commission. Moreover, any lawyers' arguments at those "hearings" would have no impact on this Court's decision on appeal. *See One 1970 Mercury Cougar v. Tunica Cty.*,

20

### III. The Commission erred by sanctioning Wright's attorney.

¶44. As noted above, the Commission also imposed sanctions on Wright's counsel for the subpoena that he served on Dr. Vohra and his deposition questioning of Dr. Vohra. Specifically, the Commission ordered counsel to pay Dr. Vohra's attorney's fees and an "additional civil penalty" of $5,000. The Commission cited Commission Procedural Rule 18(g) and Mississippi Code Annotated section 71-3-59(2) as the basis for these sanctions. While we affirm the decision of the Commission in all other respects, we conclude that the Commission erred by imposing these sanctions on Wright's attorney.

¶45. Section 71-3-59 permits an award of attorney's fees and imposition of an additional "civil penalty" of up to $10,000 only if the Commission finds "that proceedings in respect to a claim have been instituted, continued or delayed, including by way of appeal to the [C]ommission, without reasonable ground." Miss. Code Ann. § 71-3-59(2). Commission Procedural Rule 18(g) similarly authorizes an award of attorney's fees only "upon a showing that the subpoena power is being exercised in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the party or the person upon whom the subpoena is served." In an analogous context, our Supreme Court "has held that pleadings found to be justiciable, viable, or colorable are not for the purpose of harassment or delay; thus, sanctions are

---

115 So. 3d 792, 796 (¶20) (Miss. 2013) ("No citation of authority is necessary for the fundamental propositions that issues of fact are decided by the weighing of evidence, and that the arguments of counsel are not evidence."). Wright's real argument seems to be that *Dr. Vohra* failed "to make a record" because he failed to introduce sufficient evidence that compliance with the subpoena would have been unduly burdensome. We disagree. In this case, the burden is sufficiently apparent from the face of the subpoena to support the Commission's decision.

21

inappropriate." *Estate of McLemore v. McLemore*, 63 So. 3d 468, 490 (¶68) (Miss. 2011) (applying Mississippi Rule of Civil Procedure 11).

¶46. We have held that the Commission did not err by quashing the subpoena to Dr. Vohra or by denying Wright's motion to exclude Dr. Vohra's testimony. However, our holdings on those issues are based in part on the procedural posture in which the issue arose in this case and the Commission's finding that the issue of bias was "sufficiently explored" at Dr. Vohra's subsequent deposition. A party is entitled to explore the possible financial bias of an opposing expert witness and to examine, including his or her compensation in the pending litigation and history of testifying for plaintiffs, defendants, etc. *See Wells*, 997 So. 2d at 916-17 (¶29). These were matters that Wright's attorney sought to explore by subpoena and deposition, and the Commission erred to the extent that it considered these issues altogether irrelevant.

¶47. In addition, as Dr. Vohra acknowledges in his brief on appeal, "Mississippi courts have not directly addressed how best to strike a balance between the right of a party to explore an expert's financial bias and the need to avoid overly burdensome discovery directed at such experts."[12] Thus, no rules or reported cases clearly prohibited the conduct for which the Commission imposed sanctions in this case. Under these circumstances, counsel's efforts to represent his client by exploring the issue of financial bias had at least

---

[12] We also note that the Federal Rules of Civil Procedure require expert witnesses to disclose "a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition," and "a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B)(v)-(vi). The Mississippi Rules of Civil Procedure do not include a comparable requirement.

22

a "colorable" basis in the law. *Estate of McLemore*, 63 So. 3d at 490 (¶68). "[T]hus, sanctions are inappropriate" in this case. *Id.*[13]

**CONCLUSION**

¶48.    For the foregoing reasons, the Commission's decision denying Wright's claim for benefits is affirmed. However, all sanctions that the Commission imposed on Wright's attorney are reversed and rendered.

¶49.    **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

   **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES AND GREENLEE, JJ., CONCUR. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, J. FAIR AND TINDELL, JJ., NOT PARTICIPATING.**

   **CARLTON, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶50.    Finding that the Commission and the AJ erroneously admitted the unresponsive defense expert witness deposition testimony of Dr. Vohra in violation of its own rules, I respectfully concur in part and dissent in part with the majority. The Commission should follow its own procedural rules in conducting its duties of administering workers' compensation claims and should not admit evidence in contravention to those rules when to do so thwarts due process. *See Pulliam v. Miss. State Hudspeth Reg'l Ctr.*, 147 So. 3d 864,

---

   [13] We caution that service of a substantially similar subpoena in a future case may warrant sanctions. In most cases, the issue of financial bias can be explored sufficiently by oral or written deposition. *See Elkins*, 672 So. 2d at 520-22; *Primm*, 127 S.W.3d at 635-39. Production of an expert witness's financial and business records should be "ordered . . . only upon the most unusual or compelling circumstance," *Elkins*, 672 So. 2d at 521, such as when a witness is "less than forthcoming" in response to deposition questions, *Primm*, 127 S.W.3d at 639. Our holding that sanctions are inappropriate in this case is based in large part on the lack of prior Mississippi precedent on this issue.

869-71 (¶¶18-25) (Miss. Ct. App. 2014) (finding that an AJ erroneously erred in the admission of unauthenticated medical evidence and that "due process dictates that the Commission . . . follow its own procedural" rules).  As reflected in the record, Dr. Vohra's refusal to respond to deposition cross-examination questions regarding his potential financial bias thwarted Wright's due-process rights and violated the Commission's own procedural rules.  Due to this discovery transgression, Wright was thereby precluded, in violation of the Commission's own rules, from discovering relevant bias impeachment evidence bearing on the credibility, reliability, and trustworthiness of Dr. Vohra's expert testimony.

¶51.    In the case before us, Turan-Foley's[14] expert witness, Dr. Vohra, failed to submit a proper basis for his refusal to answer deposition questions posed to him on cross-examination by Wright's attorney regarding Dr. Vohra's potential financial bias.  The procedural history in the record reflects that at the hearing on the merits, the AJ allowed the record to be left open for thirty days to allow Turan-Foley to later enter its Exhibit 4—Dr. Vohra's deposition with exhibits—into the record.  The AJ acknowledged that Dr. Vohra's deposition had not yet been taken at the time of the hearing.  Wright filed his subpoena duces tecum on October 23, 2015, requesting that Dr. Vohra produce

> various information and documents relating to his performance of and income from similar work performed in the last five years and all financial documents related to independent, [Mississippi Rule of Civil Procedure] 35, or employer-requested medical examinations during the same time period, as well as complaints filed against him and treatises[.]

---

[14] As explained by the majority, Turan-Foley's insurance carrier is also a party.  I refer to the employer and carrier collectively as Turan-Foley.

¶52. Dr. Vohra's deposition was taken on November 3, 2015. After Dr. Vohra's deposition, Wright filed a motion requesting that the AJ preclude Dr. Vohra's deposition transcript from being entered into evidence or, in the alternative, to strike the deposition of Dr. Vohra from the record. The AJ's order quashing Wright's subpoena duces tecum was subsequently entered December 17, 2015. In the order quashing the subpoena duces tecum, the AJ found that the subpoena was "unreasonable and oppressive." However, the AJ's order failed to set forth any finding that Dr. Vohra possessed any existing right of privilege that would allow him to refuse to answer oral deposition questions that were relevant to the claims or defenses raised by the parties. The AJ's order also failed to set forth any findings as to the legal standard applied to the discovery transgression or to Wright's motion to strike Dr. Vohra's unresponsive deposition testimony. Dr. Vohra's refusal to answer a relevant deposition question is a separate and distinct matter from moving to quash and refusing to respond to the subpoena duces tecum.

¶53. In his order denying Wright's motion, the AJ cited his prior order quashing the subpoena duces tecum issued to Dr. Vohra and providing that "Dr. Vohra shall not be required to answer further questions in this case regarding his income earned from conducting [EMEs], [IMEs], or produce documents set out in [Wright's] [s]ubpoena [d]uces [t]ecum." The AJ's order effectively prevented Wright from discovering any financial bias of Dr. Vohra without any determination or legal authority to allow Dr. Vohra to refuse to answer relevant deposition questions, in violation of the Commission's rules. Note, pursuant to Mississippi Code Annotated section 71-3-15(3) (Supp. 2017), the Commission possesses

25

authority to regulate the reasonableness of charges and fees by medical providers for testimony and for completion of medical records and reports. Moreover, employee claimants are required to submit to such examinations in controverted cases or risk suspension of payment. *See* Miss. Code Ann. § 71-3-37 (Rev. 2011) (establishing the Commission's authority to order medical examinations in controverted cases). Due process is not served by requiring a claimant in a controverted case to participate in an EME and then prohibiting the claimant from discovering the potential bias of the physician conducting the examination and testifying for the employer.

¶54. As stated, this Court has held that "due process dictates that the Commission is to follow its own procedural due process principles in conducting its duties of administering workers' compensation claims." *Rankin v. Averitt Express Inc.*, 115 So. 3d 874, 877 (¶13) (Miss. Ct. App. 2013).[15] Procedural Rule 2.9 of the Rules of the Mississippi Workers' Compensation Commission provides "[d]epositions may be taken and discovery had by any party in accordance with the Mississippi Rules of Civil Procedure relating to depositions and discovery (Rules 26 - 37)." The Commission's Procedural Rule 2.8 further provides that the general rules of evidence are relaxed so as to allow introduction of any relevant and competent evidence. Based on the Commission's own relaxed procedural rules providing for the introduction of relevant and competent evidence, Dr. Vohra should have been required to answer the relevant deposition questions pertaining to potential financial bias.

---

[15] *See also* Miss. Code Ann. § 71-3-47 (Rev. 2011) (providing that "the details of practice and procedure in the settlement and adjudication of claims shall be determined by rules of the [C]ommission. . . .").

26

Mississippi Rule of Civil Procedure 26(b) also provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the issues raised by the claims or defenses of any party." When Wright attempted to cross-examine Dr. Vohra regarding a list that Dr. Vohra had previously provided in a different case about such income in prior years, Turan-Foley objected, explaining that the list of income sources was marked for identification purposes and not as a part of the evidence in the record. Dr. Vohra was clearly testifying as a defense expert witness about the EME he conducted at the request of Turan-Foley. Dr. Vohra admitted that he kept financial records but he did not personally maintain the financial information; rather, he had his billing staff compile financial information for him. In continuing the attempted cross-examination, Wright's counsel asked Dr. Vohra if he would estimate that the income reflected in the previously disclosed list would be about the same level with his current come from his IME, EME, and DME practice now. However, counsel for Dr. Vohra, a nonparty witness, objected and would not let Dr. Vohra answer this question as to whether his estimated current income from his IME, DME, and EME practice was consistent with that previously disclosed. In objecting, Dr. Vohra's counsel provided that he did not want his client to answer because the information was subject to a motion to quash. Wright's counsel then again asked Dr. Vohra if such current income would be about the same as it was back in 2012 and 2013. Again, counsel for Dr. Vohra objected, and Dr. Vohra expressly stated that he did not want to discuss his financial information and that he was not going to discuss it.

¶55. However, neither Turan-Foley, Dr. Vohra, nor Dr. Vohra's counsel raised any existing

27

privilege that would entitle Dr. Vohra to refuse to answer a relevant deposition question about his current income from the preceding two years derived from EMEs, IMEs, and DMEs. Except for the purpose of preserving a privilege, the Mississippi Rules of Civil Procedure do not provide for counsel to instruct a witness not to answer a question at a deposition, even if the question is indeed objectionable. *See* M.R.C.P. 30. Objections should be made at the time of the deposition and "shall be noted upon the transcription or recording. Evidence objected to shall be taken subject to the objections." M.R.C.P. 30(c); *see also Banks v. Office of the Senate Sergeant–at–Arms*, 222 F.R.D. 1, 6 (D.D.C. 2004); *Ethicon Endo-Surgery v. U.S. Surgical Corp.*, 160 F.R.D. 98, 99 (S.D. Ohio 1995).

¶56. In addition to the failure to assert any existing privilege that would protect him from answering the deposition questions, Dr. Vohra also failed to follow procedures set forth in the Mississippi Rules of Civil Procedure to limit or terminate the deposition. *See Miss. Bar v. Land*, 653 So. 2d 899, 907 (Miss. 1994), reinstatement granted, 682 So. 2d 1049 (Miss. 1996) (quoting *The Miss. Bar v. Mathis*, 620 So. 2d 1213, 1221 (Miss. 1993)) ("The proper procedure . . . [is] to object to the interrogatories and deposition question and affirmatively assert the privilege, leaving the matter to be decided by the court.").[16]

¶57. In addressing the impact of the transgressing testimony upon due process, the record reflects that the AJ and the Commission relied heavily on Dr. Vohra's expert testimony, EME

---

[16] *See generally In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 617-18 (D. Nev. 1998) (discussing objections during depositions pursuant to the Federal Rules of Civil Procedure). Moreover, Rule 30(d) places the burden on Turan-Foley or the deponent, Dr. Vohra, to move to terminate the deposition and "[u]pon demand of the objecting party or deponent, the taking of the deposition shall be suspended for the time necessary to make a motion for an order." M.R.C.P. 30(d).

report, and his expert opinion for the defense. The record also reflects that Dr. Vohra did not conduct an MRI on Wright, but nonetheless found that despite Wright's increased pain and swelling in his knee, and despite his work duties that required him to perform hard labor on a concrete floor, Wright suffered an exacerbation, but not an aggravation. In contrast to the testimony of Wright's treating physicians, Dr. Vohra also opined that such exacerbation was not causally related to the workplace injury asserted by Wright. However, Mississippi Code Annotated section 71-3-3(b) (Rev. 2011) defines an injury arising out of and in the course of employment as one that "results from an untoward event or events, if contributed to or aggravated or accelerated by employment in a significant manner." Jurisprudence has likewise recognized compensability "when a pre-existing disease or infirmity of an employee is aggravated, lighted up, or accelerated by a work-connected injury." *Rathborne, Hair & Ridgeway Box Co. v. Green*, 237 Miss. 588, 594, 115 So. 2d 674, 676 (1959). Dr. Vohra's potential bias, his credibility as a witness, and the credibility of his EME and related expert opinion were certainly at issue before the AJ and the Commission.[17] Clearly, Dr. Vohra's refusal to answer questions at the deposition regarding any potential financial bias defeated Wright's ability to discover relevant information pertaining to Dr. Vohra's credibility and the reliability of his expert opinion and EME report. *See Mueller Copper Tube Co. v. Upton*, 930 So. 2d 428, 437 (¶35) (Miss. Ct. App. 2005) ("The Workers' Compensation Commission is entitled to favor the testimony of a treating physician over a physician who had seen the

---

[17] *See* M.R.E. 616 ("Evidence of a witness's bias, prejudice, or interest—for or against any party—is admissible to attack the witness's credibility."); *See also Tellus Operating Grp. LLC v Texas Petroleum Inv. Co.*, 105 So. 3d 274, 281 (¶24) (Miss. 2012).

claimant only once.").[18]

¶58.    I turn to an application of the standard of review and applicable law to this case. Our standard of review recognizes the trial court's considerable discretion in discovery matters, and "[t]his Court will affirm a trial court's decision unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." *T.L. Wallace Constr., Inc. v. McArthur, Thames, Slay, & Dews, PLLC*, No. 2015-CA-01596-SCT, 2017 WL 2812752, at *20 (¶92) (Miss. June 29, 2017) (internal quotation marks omitted). "In determining whether a judgment fell within the discretion of the trial court, we first ask if the trial court applied the correct legal standard." *Tucker v. Delta Reg'l Med. Ctr.*, 189 So. 3d 690, 692 (¶4) (Miss. Ct. App. 2016) (internal quotation marks omitted) (citing *City of Jackson v. Rhaly*, 95 So. 3d 602, 607 (¶10) (Miss. 2012)). As acknowledged by the majority, the questions posed by Wright to Dr. Vohra at the deposition in issue constituted relevant questions, and Dr. Vohra asserted no right or privilege that would excuse him from answering the deposition questions relevant to financial bias regarding his compensation relative to IME, DME, and EME practice.[19]

---

[18] In *Mueller*, 930 So. 2d at 437 (¶35), the physician who performed the IME on the claimant evaluated the claimant only once. The claimant's treating physician, however, "was able to observe first-hand [the claimant's] progressively worsening Achilles tendon and back condition that occurred over a four and a half year period." *Id*. at (¶36).

[19] *See* M.R.C.P. 26(b)(1). *See also Scott By & Through Scott v. Flynt*, 704 So. 2d 998, 1004 (Miss. 1996) (citing M.R.C.P. 26(b)(1)) ("It is understood that evidence does not have to be admissible to be discoverable, only relevant. Likewise, it is also understood that the objection that evidence sought would ultimately be inadmissible does not prohibit its discoverability so long as it is 'reasonably calculated to lead to the discovery of admissible evidence.'").

30

Clearly, neither a party nor a deponent can restrict access to witnesses or relevant discoverable evidence at a deposition absent the existence of privilege. Dr. Vohra's deposition testimony was admitted and relied upon heavily without determining the impact of the discovery violation, the violation of the Commission's own procedural rules, and the violation of the Mississippi Rules of Civil Procedure upon due process and the rights of the parties.

¶59. Instructive to the impact on due process, in *Moore v. Delta Regional Medical Center*, 23 So. 3d 541, 546 (¶17) (Miss. Ct. App. 2009), this Court acknowledged the four-factor test applicable to determine whether excluding evidence for a transgression in discovery is an appropriate sanction. The *Moore* Court, citing *Mississippi Power & Light Company v. Lumpkin*, 725 So. 2d 721, 733-34 (¶60) (Miss. 1998), noted that the supreme court's four-factor test is follows: "(1) the explanation for the transgression; (2) the importance of the testimony; (3) the need for time to prepare to meet the testimony; and (4) the possibility of a continuance." *Id*. The *Moore* Court explained that:

> The first consideration involves a determination whether the failure was deliberate, seriously negligent[,] or an excusable oversight. The second consideration involves an assessment of harm to the proponent of the testimony. The third and fourth considerations involve an assessment of the prejudice to the opponent of the evidence, the possibility of alternatives to cure that harm and the effect on the orderly proceedings of the court.

*Id*. (quoting *Lumpkin*, 725 So. 2d at 733-34 (¶60)). Again, the record reflects that upon considering Dr. Vohra's unresponsive deposition testimony, the AJ and the Commission failed to consider the transgression against its own procedural rules for discovery and the impact of the transgressing deposition testimony upon the demands of due process. While

31

the Commission is not bound by common law, it is bound by due process and its own procedural rules.

¶60.    The majority opinion asserts that since Wright did not file a motion to compel, then Wright possesses no avenue for relief for the harm resulting from the discovery transgressions stemming from Dr. Vohra's refusal to answer relevant deposition questions. However, in this case, Wright filed a motion to strike Dr. Vohra's deposition testimony for his intentional refusal to answer, and the trial court possessed the authority to grant that motion due to the discovery transgressions regardless of whether a motion to compel was filed.[20]  Wright did not seek dismissal of Dr. Vohra or an entry of judgment against Turan-Foley. Rule 37(a) provides that a party "may apply for an order compelling discovery" where "a deponent fails to answer a question propounded" or where "an entity fails to make a designation under Rules 30(b)(6)" or and for other discovery transgressions.[21]  That Rule 37(a) uses the word "may" plainly means that it does not require a party to file a motion to compel before moving to strike the transgressing testimony.    Rather, as discussed, jurisprudence reflects that the Commission is required to follow its own procedural rules to comply with the demands of due process.  *See Pulliam,* 147 So. 3d at 869 (¶18); *see also Salts v. Gulf Nat. Life Ins. Co.*, 872 So. 2d 667, 670, 673 (¶¶4, 12) (Miss. 2004) (Defendant

_____

[20] *See* Miss. Code Ann. § 71-3-55(1) (Rev. 2011) ("[T]he [C]ommission shall not be bound by common law or statutory rules of evidence . . . but may make such investigation or inquiry or conduct such hearing in such manner as best to ascertain the rights of the parties.").

[21] *See Bowie v. Montfort Jones Mem'l Hosp.,* 861 So. 2d 1037, 1042 (¶13) (Miss. 2003) (Failure to comply with time frame within which to complete discovery warranted exclusion of plaintiff's untimely designated expert.).

has a duty to cooperate with discovery and where a party or persons designated "to testify on behalf of a party fails to obey an order to provide or permit discovery," the court can issue "such orders in regard to that failure as are just, and among others[,]" include an order striking pleadings, or parts thereof, dismissal, or rendering by default against the disobedient party.). The record reflects that neither the AJ nor the Commission applied the appropriate legal standard when considering the defense's discovery transgression or Wright's motion to strike related thereto.

¶61. Pursuant to the Mississippi Workers' Compensation Act, the Commission's own procedural rules are relaxed to allow for the introduction of relevant and competent evidence, and these Commission rules provide that deposition testimony shall be taken in accordance with Rules 26-37. The Mississippi Rules of Civil Procedure and the Commission's rules should not be manipulated to prevent a claimant from discovery of relevant impeachment evidence and evidence of potential bias of the employer's medical expert who conducted the EME to which the claimant was required to submit. As acknowledged in *Pulliam*, 147 So. 3d at 869 (¶18), "due process dictates that the Commission . . . follow its own procedural-due-process principles in conducting its duties of administering workers' compensation claims."[22] In this case, similar to *Pulliam*, the AJ erroneously allowed the

---

[22] *See United States v. Templeton*, 624 F.3d 215, 223 (5th Cir. 2010) ("The potential bias of a witness 'is always relevant as discrediting the witness and affecting the weight of his testimony.'"); *Thurber Corp. v. Fairchild Motor Corp.*, 269 F.2d 841, 845 (5th Cir. 1959) (A witness's employer may be "regarded as a relevant circumstance to be considered by the jury as showing bias or interest, and a fortiori where the witness is an employee of a party who has an interest in the recovery, his employment may be shown for the same reason."); *Thompson Mach. Commerce Corp. v. Wallace*, 687 So. 2d 149, 152 (Miss. 1997), abrogated on other grounds by *Upchurch Plumbing, Inc. v. Greenwood Utils. Comm'n*, 964

admission of evidence in violation of those rules. To serve the demands of due process, I would reverse and remand this case to the Commission. *See* Vardaman S. Dunn, *Mississippi Workers' Compensation* § 31 (3d ed. 1990).

**WESTBROOKS, J., JOINS THIS OPINION.**

---

So. 2d 1100, 1118 (¶45) (Miss. 2007)) ("Parties may liberally cross-examine proffered witnesses regarding bias and interest." The supreme court found that evidence of a witness's separation package "may have either created an issue of bias or interest or formed a basis of [the witness's] opinion.").